# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00461-CR

**Robert Leon Mason, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2010-508, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Robert Leon Mason, Jr. of the offense of aggravated kidnapping. *See* Tex. Penal Code § 20.04(a)(4). Punishment was assessed at 60 years' imprisonment. In five points of error on appeal, Mason asserts that the district court abused its discretion in overruling two of Mason's objections to conduct by the prosecutor during voir dire; that the district court abused its discretion in allowing the admission of hearsay testimony; that the evidence is insufficient to support Mason's conviction; and that the district court abused its discretion in allowing the prosecutor to make a comment during closing argument regarding Mason's failure to testify. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that, on October 4, 2010, Tiffani Yamin, an event planner, had an appointment with Norma Lazo and Doris Dollar to discuss catering an event at a country club located in a subdivision within the Comal County city of Garden Ridge. The meeting was scheduled

to take place at the same country club, which was at an address that was unfamiliar to Yamin. Yamin testified that she got lost and ended up at what turned out to be an incorrect but similar address. But not realizing her mistake immediately, Yamin parked in the driveway, approached the front door, and knocked. "Nobody answered," Yamin recounted, so she returned to her car to retrieve her phone. However, before she opened her car door, Yamin continued, "someone came to the door [of the house] and said, can I help you." Yamin turned around and saw a man, who she later identified in court as Mason. Yamin "told him that I had an appointment with Norma Lazo, is she here; and he said yes, she is, come on in." Yamin then went inside the house.

Once Yamin entered, she further testified, "He shut the door. I turned around and he locked the door." According to Yamin, Mason was standing between her and the door, looking at her, and not saying anything. After Mason locked the door, Yamin continued, "He pulled his pants down and started masturbating." Yamin added that Mason inquired if she "wanted to suck his big fat dick," which Yamin perceived to be a "command" because Mason's voice was "deep" and "commanding," and Mason "was aggressive." Yamin added that Mason's "eyes were red" and his stature was "very big, very big . . . he looked like a husky football player." It was at this point that Yamin realized that she was in trouble and began "screaming at the top of [her] lungs" for Norma Lazo, still in the belief that she was at the country club where their event-planning meeting was scheduled. Yamin added, "I just started to panic." Yamin testified that Mason then began to "mock" her and call out "Norma, Norma." At that point, Yamin realized that she "was in that house alone." Yamin explained, "I was shocked. I mean, I was panicked. I . . . just freaked out. I mean, I was—I was fearful." She added that she was also afraid because no one knew where she was at the time.

2

Yamin further testified that Mason "started to approach me and I—he's going to rape me, that's what I was thinking." According to Yamin, Mason "came right up to [her]" and "was in [her] space." Yamin could not recall exactly what happened after Mason began to approach her, but she remembered that she "just kind of ducked him," unlocked the door, and then "ran out of the house screaming." She explained,

> And I had my arm out and—he was approaching me and I had my arm out and he was just kind of going around this way and I just kind of was ducking him. I mean, I don't know. I mean, I was just so panicked at that time that I kept my—and on that door lock because I knew that was the way in and that was my only way out.

Yamin estimated that she was in the house for "a couple of minutes," but added that "[i]t could be more. I don't really—I don't really know. It felt like a long time." When asked if she felt restrained during the incident, Yamin testified, "Yeah, absolutely. I mean, I felt trapped in the house, yeah."

After escaping the house, Yamin got into her car, drove away, and called Norma Lazo, leaving her a voicemail message. Shortly thereafter, Lazo called Yamin back, and Yamin explained what had happened. Lazo and Dollar, who were driving in a car together, met up with Yamin at an intersection in the subdivision, and Dollar then called the police. An officer subsequently arrived at the intersection, and Yamin told the officer what had happened. She then accompanied the officer to the police department and provided a written statement. Subsequently, Yamin also identified Mason in a photo lineup.

Based on Yamin's testimony and other evidence, which we discuss in more detail below as it is relevant to Mason's points of error, the jury found Mason guilty of the offense of aggravated kidnapping and assessed punishment as noted above. The district court sentenced Mason in accordance with the jury's verdict. This appeal followed.

3

**ANALYSIS**

**Voir dire**

In his first point of error, Mason asserts that the district court abused its discretion in allowing the prosecutor to pose an improper commitment question to the jury during voir dire. In his second point of error, Mason asserts that the district court abused its discretion in allowing the prosecutor to inform the jury during voir dire of the holding of an appellate court in a case similar to Mason's.

The trial court has broad discretion over the process of selecting a jury during voir dire. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003); *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988). "Thus, we leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion." *Sells*, 121 S.W.3d at 755; *see Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012); *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). In this context, our review is focused on whether a party proffered a proper question regarding a proper area of inquiry. *See Hernandez*, 390 S.W.3d at 315. A "proper" question is one which seeks to discover a prospective juror's views on an issue applicable to the case. *Rhoades v. State*, 934 S.W.2d 113, 118 (Tex. Crim. App. 1996). A trial court abuses its discretion either when it prohibits a proper question from being asked, or allows, over objection, an improper question to be asked. *See Barajas*, 93 S.W.3d at 38; *Atkins v. State*, 951 S.W.2d 787, 790 (Tex. Crim. App. 1997).

We first address Mason's contention that the State asked an improper commitment question. A commitment question is one that commits a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. *Hernandez*, 390 S.W.3d at 315

4

(citing *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001)). "[T]he purpose for prohibiting improper commitment questions by either the State or the defendant is to ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). "Commitment questions require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context." *Id*. "It is this prejudgment of the value and importance of certain evidence that is the evil to be avoided . . . ." *Id*. Not all commitment questions are improper, however. *Hernandez*, 390 S.W.3d at 315. Where the law requires a certain type of commitment from jurors, such as considering the full range of punishment or disregarding illegally obtained evidence, an attorney may ask prospective jurors to commit to following the law in that regard. *Standefer*, 59 S.W.3d at 181. Conversely, "where the law does not require the commitment, a commitment question is invariably improper." *Id*.

In this case, Mason claims that the following discussion by the prosecutor constituted an improper commitment question:

[Prosecutor]:    So in that scenario we have kidnapping, her getting in the car, doors being locked, and him saying, you're coming with me. Plus we have the aggravated circumstance, which is his intent to terrorize the woman.

Now, there's a very important thing that you have to remember about the aggravating circumstances . . . . The aggravating circumstance does not have to be completed. That's a real important fact. Does anybody have a problem with that issue?

Let's say—and I touched on—a little bit on my examples. When she gets out of the car and she has not been sexually

5

assaulted, it is still an aggravated kidnapping because the aggravating circumstance does not have to be completed. The fact that the—excuse me?

[Venireperson]: The intent.

[Prosecutor]: Yes, that's—and what was your number, please?

[Venireperson]: 33.

[Prosecutor]: Okay. Thank you.

And so when she saw the rope, let's assume he was going to tie her up or choke her to death, okay, that combined with, you're not getting out of here—

[Defense counsel]: Judge, I'll object to that last portion. It's a misstatement of the law. We're not allowed to speculate as to what someone may have done in the future on that. I don't—the language and interpretation is not covered in the statute.

[The Court]: She was referring to the intent. Correct?

[Prosecutor]: The intent.

[The Court]: That's how I understood it.

[Defense counsel]: So is my objection overruled, Judge?

[The Court]: My point is—can you clarify for me what your objection is?

[Defense counsel]: She had just told the panel—and I guess—it sounds like a commitment question to me instead of a hypothetical about because there was a use of a rope, then we can all assume—and then she listed out certain things and then asking for a buy-in into that proposition. That is my formal objection, improper question.

[The Court]: Ladies and gentlemen, you must simply be able to follow the law because the Court will ultimately give you a charge and —and—and counsel from neither side is allowed to commit you to a certain set of facts or circumstances unless that commitment is in compliance with the dictates of the law.

6

> So right now, though, I'm going to overrule counsel's objection. I understood the comments to go to the aggravating factors that the law only requires that the intent be present on that last scenario.

According to Mason, the hypothetical posed by the prosecutor "was clearly designed to ascertain whether or not a member of the panel could find the requisite intent based upon a certain fact or set of facts: a period of time of two minutes or less." In Mason's view, this constituted an improper commitment question "because it left members of the panel with the view that if that period of time were demonstrated, then they were obligated to return a verdict of guilty to the offense of aggravated kidnapping."

We disagree with Mason's characterization on appeal of the above discussion. The prosecutor was using a hypothetical scenario (and not one involving any alleged "period of time" in this case) to explain the elements of the aggravated-kidnapping statute, specifically the requirement that the aggravating circumstance in the offense is the intent to commit a certain act during the kidnapping, rather than the act itself. For example, as the prosecutor explained, a person commits the offense of aggravated kidnapping if he has an intent to sexually assault the victim whom he kidnaps; he does not have to actually commit the sexual assault in order for the aggravating circumstance to be present. *See* Tex. Penal Code § 20.04(a)(4). It is not improper for the prosecutor to explain the law to the venire and inquire into whether the venire can follow the law. *See Urtado v. State*, 333 S.W.3d 418, 427 (Tex. App.—Austin 2011, pet. ref'd). Thus, to the extent that the prosecutor may have asked a commitment question of the venire in the above discussion, we cannot conclude on this record that the district court abused its discretion in failing to find that any such question was improper. We overrule Mason's first point of error.

7

We next address Mason's contention that the prosecutor impermissibly referred to the holding of an appellate court. The record reflects that the prosecutor made the following comment: "Okay. In fact, the Texas Court of Appeals has ruled in *Hines v. State* that—that under the kidnapping statute, there is no specific time requirement for determining whether a restraint has taken place, so that's where we get our law." Mason made no objection to the prosecutor's reference to the case at that time, and the prosecutor continued with her voir dire. However, shortly thereafter, the following occurred:

| [Prosecutor]: | There is also a court case, *Rodriguez v State*, that has said that less than two minutes— |
| --- | --- |
| [Defense counsel]: | Judge, I'm going to object that the law comes from the Court and not the prosecution and— |
| [The Court]: | Overruled. |
| [Prosecutor]: | May I continue, Your Honor? |
| | Less than two minutes is a substantial restriction of liberty and restraint is complete, so— |
| [The Court]: | It can be, correct? It doesn't have to be. |
| [Prosecutor]: | That's correct, Your Honor. |
| [Venireperson]: | So there is a time limit? |
| [Prosecutor]: | There's not a time limit. And that particular case—I'm going to go back just in case there's any kind of question. Less than two minutes is still a substantial restriction of liberty and restraint is complete. |
| | And that's a direct quote from a case, Your Honor. That's from the Texas Court of Appeals in Houston from 1982. |

On appeal, Mason asserts that the prosecutor's reference to the holding of an appellate court "left the improper impression with the jury that the ultimate responsibility for determining the appellant's guilt laid elsewhere: the appellate courts of this State." In Mason's view, this violates the decision of the United States Supreme Court in *Caldwell v. Mississippi*, 472 U.S. 320 (1985).

As an initial matter, the State argues that Mason failed to preserve error on this point. We agree. To preserve an issue for appellate review, a party must timely object, stating the specific legal basis for the objection. *See* Tex. R. App. P. 33.1(a)(1). An objection is timely if it is made at the earliest opportunity or as soon as the grounds for the objection become apparent. *See Lackey v. State*, 364 S.W.3d 837, 844 n.28 (Tex. Crim. App. 2012); *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). Additionally, the point of error on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Here, Mason's objection was neither timely nor did it comport with the point of error raised on appeal. It was not timely because the prosecutor had earlier made a reference to a similar holding of an appellate court, *Hines v. State*, without any objection from Mason. And, when Mason did belatedly object to a reference to another court's holding, it was on the ground that "the law comes from the Court and not the prosecution." That is not the argument that Mason has raised on appeal. Accordingly, Mason did not properly preserve error and there is nothing for us to review. *See* Tex. R. App. P. 33.1(a)(1).

Moreover, even if Mason had preserved error, we could not conclude on this record that the prosecutor's reference to the holding of an appellate court violated the decision in *Caldwell*. In that case, the prosecutor had argued to the jury during the State's closing argument at sentencing that the jury was not responsible for the death sentence that it could impose on the defendant because

9

the jury's decision would ultimately be reviewed on appeal. *See Caldwell*, 472 U.S. at 325. The Supreme Court reversed, holding that a death sentence cannot rest on a determination by a jury that "has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere" and that the imposition of sentence following such an argument by the State violated the Eighth Amendment. *Id*. at 328-29. The district court would not have abused its discretion in concluding that that is not what occurred here. In addition to the obvious factual differences between this case and a case imposing the death penalty, and the procedural differences between a prosecutor's comment during voir dire and a prosecutor's argument during sentencing, the prosecutor here was not informing the jury that the responsibility for its verdict rested with an appellate court. Rather, the prosecutor was explaining the law to the jury by referring to the holding of an appellate court in a different case. Thus, even if Mason had timely and specifically objected on the basis of *Caldwell*, we could not conclude that the district court abused its discretion in failing to find that such a reference would, in Mason's words, "mislead[] the jury into believing that an appellate court would ultimately determine the propriety of their verdict." We overrule Mason's second point of error.

**Hearsay**

We next address Mason's fourth point of error, in which he asserts that the district court abused its discretion in admitting testimony by the investigating officer, Donna O'Connor, that Mason contends was hearsay. Officer O'Connor testified that, on the date in question, she had responded to a call that had been placed to the Garden Ridge Police Department. Once she arrived at the location specified in the call, which, according to O'Connor, was approximately half a mile away from the police department, O'Connor "saw two vehicles on the side

10

of the road, but one of them was positioned halfway on the road and halfway off, like it had pulled very rapidly off the road." At the scene, O'Connor made contact with three women, Lazo, Dollar, and Yamin. According to O'Connor, "It was very easy for me to determine which of the three were the victims because she was very distraught, makeup smeared. She was extremely nervous and shaken." When asked to specify "how much time had elapsed between the phone call about the incident and [her] arrival" at the scene, O'Connor testified, "I would have to say very few minutes. . . . The sergeant told me [about the call] and I responded the half mile. So it was very, very rapid, just a few minutes." O'Connor then proceeded to testify, over repeated hearsay objections by Mason, as to everything that Yamin had told her about what had occurred.[1] The district court overruled the objections on the ground that the testimony was not being offered to prove the truth of the matters asserted, but instead was being offered as background information to help explain the subsequent actions of law enforcement during the investigation.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). Moreover, we must sustain a trial court's ruling admitting or excluding

---

[1] At the time, Mason also objected on the basis of the Confrontation Clause, but that complaint has not been carried forward on appeal, presumably because the victim subsequently testified in court and was available for cross-examination.

evidence on any theory of law applicable to the case, even if the trial court gives the wrong reason for its ruling. *See Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

Assuming without deciding that O'Connor's testimony included statements that went beyond merely providing background information regarding the actions of law enforcement during the investigation,[2] the district court would not have abused its discretion in finding that O'Connor's testimony was admissible under an exception to the hearsay rule, the excited utterance. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." Tex. R. Evid. 803(2). "The basis for the excited utterance exception is 'a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the truth will come out.'" *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). Factors that the trial court may consider in determining whether a hearsay statement is admissible as an excited utterance include "the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). However, "these are simply factors to consider" and are not dispositive. *Zuliani*, 97 S.W.3d at 596. "The critical determination is 'whether the declarant was still dominated by the

---

[2] "It is true that testimony by an officer that he went to a certain place or performed a certain act in response to generalized 'information received' is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior. But details of the information received are considered hearsay and are inadmissible." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005); *see also Langham v. State*, 305 S.W.3d 568, 577 n.30 (Tex. Crim. App. 2010); *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999); *Schaffer v. State*, 777 S.W.2d 111, 114-15 (Tex. Crim. App. 1989).

12

emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Id.* (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). "The critical question" in deciding whether a statement qualifies as an excited utterance is "whether the declarant was still dominated by the emotion caused by the startling event when she spoke." *Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010).

Here, Officer O'Connor testified that "very few minutes" had passed between the time that the police department had received the call reporting the incident and the time that she made contact with the victim. Additionally, O'Connor testified that Yamin "was very distraught, makeup smeared. She was extremely nervous and shaken." Also, O'Connor testified that when the incident was happening, which occurred shortly before Yamin spoke with O'Connor, Yamin had felt "terrorized. She thought she was not going to get out. She thought she was going to be raped." O'Connor further testified that it was "impossible" at the time of her conversation with Yamin to get a written statement from her because "[s]he was too shaken and just hysterical." Even after Yamin went to the police department, O'Connor testified, "she could not write her statement. She was still too shaken. I had to type the statement for her." Based on this and other evidence, it would not be outside the zone of reasonable disagreement for the district court to conclude that Yamin's statements to O'Connor were excited utterances, and were thus admissible on that ground. Accordingly, we cannot conclude that the district court abused its discretion in admitting the evidence. We overrule Mason's fourth point of error.

**Evidentiary sufficiency**

In Mason's third point of error, he asserts that the evidence is insufficient to prove that he committed the offense of aggravated kidnapping as alleged. A person commits the offense

13

of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to inflict bodily injury on her or violate or abuse her sexually. *See* Tex. Penal Code § 20.04(a)(4). For purposes of this statute, "abduct" means to restrain a person with intent to prevent her liberation by secreting or holding her in a place where she is not likely to be found. *See id*. § 20.01(2)(A).

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the finding of guilt to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virgina*, 443 U.S. 307, 319 (1979). We must consider all the evidence in the record, whether direct or circumstantial or properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the finding, and we defer to the trier of fact's determinations of the witnesses' credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 318; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04.

On appeal, Mason challenges only the sufficiency of the evidence to prove that the victim was "restrained." Specifically, Mason asserts that Yamin voluntarily entered Mason's residence and shortly thereafter left the residence and that Mason did nothing to interfere with her departure.

"Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. *Id*. § 20.01(1). Restraint is "without consent" if it is accomplished by

14

force, intimidation, or deception. *Id*. § 20.01(1)(A). There are many ways in which one may be "restrained" for purposes of the kidnapping statute. As the court of criminal appeals has explained,

> [T]here is nothing in the Texas statute that even suggests that it is necessary for the State to prove that a defendant moved his victim a certain distance, or that he held him a specific length of time before he can be found guilty of kidnapping. In fact, we have consistently held that under the kidnapping statute, there is no specific time requirement for determining whether a restraint has taken place.

*Hines v. State*, 75 S.W.3d 444, 447-48 (Tex. Crim. App. 2002). Similarly, there is more than one way to prove that a person was confined so as to be restrained. *See Holmes v. State*, 873 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no pet.) (explaining that "[c]onfining is not defined in the Penal Code or by case law; thus, we use its common meaning when reviewing the evidence," which may include shutting up, imprisoning, enclosing, detaining, relegating to certain limits, or trapping victim). Thus, "'[i]t is clear that our law imposes no minimal requirement for restraint other than the interference with the victim's liberty be substantial.'" *Rogers v. State*, 687 S.W.2d 337, 342 (Tex. Crim. App. 1985) (quoting *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.—Houston [1st Dist.] 1982, no pet.). "It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place." *Hines*, 75 S.W.3d at 448. "This can be established by looking at all of the circumstances surrounding the offense."

Here, the circumstance surrounding the offense included the following: (1) Yamin was in an unfamiliar neighborhood, at a private residence that she had mistakenly believed to be a country club; (2) Mason enticed Yamin to enter his house by falsely representing to her that Norma was there when, in fact, she was not; (3) once Yamin had entered the house, a place she had

15

never been previously, Mason locked the door behind her; (4) Mason then proceeded to pull down his pants and begin masturbating in front of Yamin; (5) Mason also told Yamin, in a "deep" and "commanding" voice, to "suck my big fat dick"; (6) Mason was standing between Yamin and the door; (7) Mason was "aggressive" during the incident; (8) Mason's "eyes were red" and he was "very big . . . he looked like a husky football player"; (9) Mason was "mocking" Yamin as she was screaming, by calling out "Norma, Norma" in imitation of Yamin's screams; (10) Mason then "approached" Yamin, with his pants still down, and "came right up to [her]" and "was in [her] space"; (11) in order to escape, Yamin had to "duck" Mason, unlock and open the door, and run outside to her car; (12) although Yamin estimated that the incident only lasted "a couple of minutes," she testified that "it could be more" and that it "felt like a long time"; (13) during the incident, Yamin "felt trapped in the house"; (14) no one knew where Yamin was when she was inside the house; (15) during the incident, Yamin was "scared," "hysterical," "freaked out," and afraid that Mason was going to rape her. Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Mason had restricted Yamin's movements without her consent, so as to interfere substantially with her liberty, by confining her. The jury could have reasonably inferred that Mason had restricted Yamin's movements by locking the door behind her and positioning himself, "a very big man," between her and the door. The jury also could have reasonably inferred that this was a substantial interference with Yamin's liberty because of the sexual and aggressive nature of Mason's behavior, the verbal command he had given her, and the way he had approached her and "came right up next to [her]" and "was in [her] space" with his pants still down. The jury further could have reasonably inferred that Yamin was confined because the door was locked

16

and she was in an unfamiliar house, with Mason blocking her access to the only exit of which she was aware. And, the jury could have reasonably inferred that the restraint was without Yamin's consent because of the manner in which Mason had deceived her into entering the house and subsequently intimidated her with his conduct. We conclude that the evidence is sufficient to prove that Mason committed the offense of aggravated kidnapping as charged. We overrule Mason's third point of error.

**Closing argument**

In his fifth point of error, Mason asserts that the district court abused its discretion in allowing the prosecutor to make a comment during closing argument on Mason's failure to testify. During the prosecutor's closing argument, she discussed the testimony of Maria Villarreal, an extraneous-offense witness who had testified that Mason had grabbed her breasts in a parking lot on a prior occasion. The State used this testimony as evidence of Mason's sexual intent toward the victim in this case. *See* Tex. R. Evid. 404(b). Villarreal was not cross-examined by Mason. When the prosecutor was summarizing Villarreal's testimony during the State's argument, the record reflects that the following occurred:

| [Prosecutor]: | As evidence of the defendant's intent, you need look no further than the testimony of Maria Villarreal. And as the Judge already read to you in the jury charge, before you can use that as evidence of what the defendant's intent was once he got Tiffini in that house, you have to find beyond a reasonable doubt that what Maria Villarreal testified from the stand happened. Maria Villarreal's testimony was clear and concise and not controverted at all. |
|---|---|
| [Defense counsel]: | Objection, Judge. I take that as a comment on my client's right not to testify. I would ask that last portion of her argument be stricken. |

17

[The Court]:          Well, I didn't take it as such. I thought it was just uncontroverted. Overruled.

According to Mason, the prosecutor's comment that Villarreal's testimony was "not controverted at all" was an impermissible reference to the fact that Mason did not testify at trial.

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Under this standard, we are to uphold the trial court's ruling unless it is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

A comment on a defendant's failure to testify violates both the state and federal constitutions as well as Texas statutory law. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *see* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08; *see also Griffin v. California*, 380 U.S. 609, 615 (1965). However, "the implication that the State referred to the defendant's failure to testify must be a clear and necessary one." *Randolph*, 353 S.W.3d at 891 (citing *Bustamante v. State*, 48 S.W.3d 761, 767 (Tex. Crim. App. 2001)). "If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation." *Id*. (citing *Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008)). "The test [] is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id*.;

18

*see also Bustamante*, 48 S.W.3d at 765 (collecting cases). "In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character." *Id*. Courts are not to find that the prosecutor manifestly intended to comment on the defendant's failure to testify "if some other explanation for [her] remark is equally plausible." *Id*. (citing *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977)). "[C]ourts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument." *Id*.

In this case, the prosecutor argued that Villarreal's testimony was "not controverted at all." This comment is not necessarily a reference to a defendant's failure to testify. Here, the district court could have reasonably found that the comment was a reference to the fact that, after Villarreal testified for the State, Mason did not offer any cross-examination of the witness. Thus, as the district court remarked, the testimony was, in effect, "uncontroverted"—by not cross-examining Villarreal, Mason chose not to attack her credibility as a witness, dispute her recollection of events, or otherwise question her account of what had happened. Thus, viewing the argument from the jury's standpoint, it would not be "outside the zone of reasonable disagreement" for the district court to conclude that the prosecutor's comment was not a reference to the fact that Mason failed to testify, but was instead a reference to the fact that Mason failed to cross-examine the witness. *See Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992) ("Language that can reasonably be construed to refer to a failure to present evidence other than from the defendant's own testimony does not amount to comment on failure to testify."); *Burnett v. State*, 842 S.W.2d 296, 300 (Tex. App.—Fort Worth 1992, pet. ref'd) (use of word "uncontroverted" could be reference to issues not in dispute, not necessarily reference to defendant's failure to testify). Accordingly, we cannot

19

conclude that the district court abused its discretion in overruling Mason's objection to the argument.

We overrule Mason's fifth point of error.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   August 28, 2013

Do Not Publish