**Eleuterio Ledesma ESPERICUETA,
Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–342–CR.**

Court of Appeals of Texas,
Corpus Christi.

March 3, 1983.

Israel Ramon, Jr., Edinburg, for appellant.

Robert Salinas, Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

UTTER, Justice.

Appellant was indicted for murder. The jury, however, found appellant guilty of voluntary manslaughter and assessed punishment at five years in the Texas Department of Corrections.

Although appellant does not challenge the sufficiency of the evidence, a brief summary of the facts is necessary to address appellant's contention that the trial court erred in refusing to charge the jury on certain matters. The evidence shows that appellant and Alfonso Cerda Martinez, the deceased, developed an antagonistic relationship because appellant's wife lived with Martinez. Prior to the fateful day, Martinez had thrown shovels and knives at the appellant. Without going into detail, the relationship could only be described as quite unfriendly.

On June 21, 1981, an argument between appellant and Martinez ended in Martinez' death. Certain details are disputed, but without question Martinez' death occurred when a hammer held by the appellant came into contact with Martinez' face and ripped out his left eyeball. Appellant apparently did carpentry work so it was not unusual for him to have a hammer.

Several witnesses testified for the State. One said that appellant chased Martinez down a street and hit him five times. Another witness verified this account, and still another witness said that appellant hit Martinez with a hammer in the face and groin. No one disputes the fact that Martinez was unarmed.

Dr. Ruben Santos, who performed the autopsy, testified that the deceased died from numerous severe fractures and lacerations to the brain. He noted that the left side of the face, including the eye, was destroyed and that there were lacerations on the face and around the genitals.

A written statement made by appellant was introduced by the State. In it appellant admitted to pursuing the deceased and hitting him. According to the statement, "I then swung at him with the hammer and hit him on his face and as he was falling I swung again and hit him somewhere between his legs and he fell to the ground and didn't move after that."

Testifying in his own defense, appellant stated that he did not mean to kill the deceased. Instead, appellant said the deceased was the aggressor and kept trying to hit him. Appellant said he raised his hammer to block the deceased's attack and just happened to pierce the deceased's eye. No attempt was made to reconcile this account with the stories told by the other witnesses.

In his first ground of error, appellant contends that his testimony raised the issue of criminal negligence and that the trial court erred in refusing to instruct the jury on criminally negligent homicide. The rule is well settled in Texas that if the evidence raises an issue on a lesser included offense, and the defendant requests a charge on the issue, the trial court must charge on that issue. *Ormsby v. State*, 600 S.W.2d 782 (Tex.Cr.App.1980). The credibility of evidence and whether it is controverted or conflicts with other evidence may not be considered in determining whether a defensive charge or instruction on a lesser included offense should be given. *Moore v. State*, 574 S.W.2d 122 (Tex.Cr.App.1978). Appellant objected to the court's failure to charge on criminally negligent homicide, and submitted a requested jury instruction on the issue. The court charged the jury on murder, voluntary manslaughter, involuntary manslaughter, aggravated assault, and self-defense.

A person commits criminally negligent homicide if he causes the death of an individual by criminal negligence. Sec. 19.07,

Tex.Penal Code Ann. (Vernon 1974). Sec. 6.03(d) of the Penal Code defines "criminal negligence":

"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under the circumstances viewed from the actor's standpoint."

Appellant's defensive theory was that of self-defense and he testified accordingly. We do not find that the appellant's testimony raised an issue of criminally negligent homicide—as he now claims. If the jury believed the appellant's version and rejected the other evidence, it would not have been entitled to find appellant guilty of criminally negligent conduct. The mere raising of hammer to block a volley of punches does not constitute a gross deviation from the standard of care that an ordinary person would exercise under the circumstances. If believed, the appellant would have been entitled to an acquittal. No fact issue was raised as to appellant's criminal negligence. The trial court did not err in refusing to charge on criminally negligent homicide.

■ In his second ground of error, appellant contends the trial court erred in admitting photographs of the victim. The admission of photographs rests largely in the discretion of the trial judge, who determines whether they serve a proper purpose in the jury's enlightenment, and his action will not be disturbed in the absence of a showing of an abuse of discretion. *Lanham v. State,* 474 S.W.2d 197 (Tex.Cr.App.1972). The complained of photographs, while gruesome, cannot be characterized as having only slight or no probative value, especially in light of appellant's claim that he merely raised the hammer to defend himself and did not repeatedly strike the deceased. The

photographs show various wounds, and this is probative evidence controverting appellant's claim of self-defense. Under such circumstances, the trial court did not abuse its discretion in admitting the photographs. Appellant's second ground of error is overruled.

■ In his third ground of error, appellant contends the trial court erred when it allowed the prosecuting attorney to read aloud the names of the witnesses, including the name of appellant's spouse. Appellant cites *Johnigan v. State,* 482 S.W.2d 209 (Tex.Cr.App.1972) and *Clayton v. State,* 465 S.W.2d 769 (Tex.Cr.App.1971) as authority for his proposition, but acknowledges that *Clayton* is contrary to his position. The record in this case shows that before any testimony was taken, the trial judge asked the prosecution to hand the bailiff its witness list and the bailiff then called these individuals into the courtroom. No objection was made to the reading of these names. In reviewing the authority, we are compelled to follow *Clayton* and hold that no reversible error occurred. We also note that appellant's wife testified as a defense witness, thereby removing any impression that her testimony would be adverse to the appellant. Under the circumstances of this case, we find no reversible error. The appellant's third ground of error is overruled.

■ In his fourth ground of error, appellant contends the trial court erred in denying appellant's requested charge on his right "to seek an amicable adjustment of his differences with the deceased" and to protect himself in the process. Appellant contended at trial that he approached the deceased with the intent to settle their differences. He requested that the jury be instructed of his right to defend himself while conversing with the deceased. We have reviewed the charge of the court and find that no limitations were placed upon the appellant's right of self-defense. This brings the case within the rule set forth in *Young v. State,* 530 S.W.2d 120 (Tex.Cr. App.1975). Appellant concedes that no error occurred if *Young* is followed. *Young* is supported by a long line of Texas cases.

The appellant's fourth ground of error is overruled. The judgment of the trial court is AFFIRMED.