**Faelyn Ann ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 66440.**

Court of Criminal Appeals of Texas, En Banc.

March 27, 1985.

Paul J. Chitwood, Dallas, for appellant; Edgar A. Mason, Dallas, of counsel.

Donald R. Ross, Co. Atty., and David P. Brown and Richard W. White, Asst. Co. Attys., Henderson, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

A jury found appellant guilty of aggravated kidnapping. The court assessed punishment at 30 years' confinement.

Appellant alleges five grounds of error, including a challenge to the sufficiency of the evidence. We first address appellant's contention that the evidence is insufficient.

The indictment charged:

that FAELYN ANN ROGERS, on or about the 20th day of November, A.D. 1979, and before the presentment of this indictment, in said County and State, did then and there, with intent to prevent the liberation of Jo Lynn Rogers, and without her consent, restrain the said Jo Lynn Rogers by secreting and holding her in a place where she was not likely to be found, and the said FAELYN ANN ROGERS intentionally and knowingly abducted the said Jo Lynn Rogers with the intent to terrorize Ted Murf Rogers,....

In the opening statement to the jury, the State briefly summarized their case, listing their witnesses, including Ted Murf Rogers. The State then presented its case.

Randy Horton lived at Cherry Park Trailer Park, near Tatum, with his wife and two children. Ted Rogers and Jo Lynn Rogers lived in an adjacent trailer house. Horton testified that on November 20, 1979, at about 5:30 a.m. as he got ready for work, he noticed that Ted Rogers had already left for work. He saw a brown Ford, with its

parking lights on, move from in front of his trailer over to the Rogers' trailer. Horton heard a car door slam and looked outside, but did not see anything unusual. Two minutes later, Horton heard a high-pitched scream. His wife tried, unsuccessfully, to call the Tatum police. Horton got in his truck and drove by Ted Rogers' trailer. The Rogers' trailer door was open. The brown Ford was parked next to the trailer door with the parking lights now off. Horton drove by for a second look and saw a figure seated behind the wheel of the Ford. The trunk of the Ford was open. Horton drove by a third time and saw a body lying on the ground partially behind and to the side of the Ford, and a second person standing in front of the body. He testified that the body on the ground appeared to be a female in a blue nightgown or housecoat, and the person standing by the body appeared to be male.

Horton drove to the trailer park store and asked James Horn, the manager of the store, to go to the Rogers' trailer with him. Horton drove back to his trailer, grabbed his rifle from his truck, and walked toward the brown Ford. As he approached it, the Ford drove away in the direction of the highway. Horton shouted at them to stop. He saw light blue material hanging from the left rear door. Horton shouted to Horn, who had come in his own car, to chase the Ford. Horton followed in his own truck but couldn't catch up. He saw Horn at the 4-way stop in Tatum and both returned to the Rogers' trailer, finding the door open and a baby crying in its crib.

James Horn was the Cherry Park Trailer Court manager and operated the grocery and laundromat. He testified that on November 20, 1979, Horton ran into his store and said something was happening at the Rogers' trailer. Horn drove over to the Rogers' trailer. A two-toned Ford passed him on the way and Horton yelled for Horn to give chase. As the Ford turned onto the highway toward Tatum, Horn saw material dangling from the left rear door. Horn said that he chased the Ford at speeds in

excess of 80 mph, and that when the Ford slowed at the 4-way stop in Tatum he wrote down the license plate number. He lost the chase there and returned to the trailer.

Carl Gage, chief of police for Tatum, testified that at 6:30 a.m. on November 20, 1979, he responded to a call at the trailer court. He met Horn and Horton at the Rogers' trailer. Gage said he entered the trailer and conducted a search. He said the trailer was clean and in order and that he found a purse containing $500.00. Gage testified that the license plate number written down by Horn was the same as that on the certification registered to appellant's vehicle. Both the piece of paper used by Horn and the certification were admitted into evidence.

Betty Outler worked at the University of Texas Health Science Center in Dallas.[1] She testified that appellant was her secretary, and that on November 20, the appellant came to work late, around 10:00 a.m. She further stated that she noticed scratches on appellant's neck; scratches which were not present the day before.

Outler testified that on December 1, appellant told her that she had gone to the Rogers' trailer on November 20. Appellant explained that she wanted to see Ted, but that he had already gone to work. Appellant told Outler that she and Jo Lynn decided to confront Ted because he had been lying to both of them. They left in appellant's car. At one point the appellant realized they were headed in the wrong direction. Appellant told Outler that, as she negotiated a U-turn, Jo Lynn jumped from the car and ran off through the woods.

Ricky DeAx, a warrant investigator for Dallas County, testified that he arrested appellant on November 20, 1979 at approximately 12:15 p.m. He said that as he escorted appellant to his car, he observed a black man slumped down in the appellant's car—as if waiting for someone.

Ann Montgomery worked with appellant at U.T.H.S.C. She testified that she and appellant became close friends. She said

1. Hereinafter referred to as U.T.H.S.C.

that appellant referred to Jo Lynn as Ted's girlfriend, and that appellant wanted "to get her husband [Ted] back."

Montgomery testified that in August of 1979, she and appellant drove to Tatum. They waited for Ted Rogers to go to work. Then, under the pretense of conducting a survey, Montgomery knocked on the trailer door to see if Jo Lynn was still there. Appellant waited in the car. Montgomery said that a young blond weighing in excess of 200 pounds answered the door.

In subsequent conversations with Montgomery, appellant made clear that she was determined to "get" Jo Lynn, that she wanted Jo Lynn to disappear to get revenge on Ted. Montgomery testified that appellant asked her for the name of someone who would "make this girl [Jo Lynn] disappear." Appellant showed Montgomery a vial of white liquid and told her it was chloroform for Jo Lynn. Appellant asked Montgomery to be her alibi and meet her in Mexico. Appellant told Montgomery that all of her sources were falling through and that it looked like she would "have to do it herself."

Lynda Leard also worked at U.T.H.S.C. with appellant. Leard had relatives in Tatum and on several occasions, appellant would borrow her car to go to Tatum.

Leard testified that she went to Tatum with appellant and Jessie Proffer one weekend so that appellant could see Ted. Leard said appellant told her and Proffer that Ted was coming back to her after he returned from overseas.

Leard testified that appellant also told her that she always paid her debts and would get back at Ted, and that she wanted Jo Lynn to disappear so Ted would suffer mental torture.

William Brown, criminal investigator for Rusk County, testified that he had conducted two thorough land and air searches for Jo Lynn, had circulated photo flyers to the law enforcement communities in the area, and had issued a description of Jo Lynn, that was sent by computer statewide. Jo Lynn has not been found.

The last witness called by the State was Arrilian Smith, the father of Jo Lynn Rogers. Jo Lynn and her baby visited Smith the weekend before she disappeared. Smith said that Jo Lynn had injured her ankle and required assistance to move about. She had used a walker for five weeks. Smith did not think it was possible for Jo Lynn to jump from a car and run through a field.

Appellant's attack on the sufficiency of the evidence is threefold. First, she urges that the aggravating element of "terrorize Ted Murf Rogers" is unsubstantiated by the evidence. Second, appellant asserts that the element of "abduction" has not been proved, because there is not one word of testimony that Jo Lynn had been secreted and held in a place she was not likely to be found. Third, appellant contends that the State did not prove force, intimidation, or deception as required by Article 20.-01(1)(A), Texas Penal Code.

■ We review the evidence in the light most favorable to the verdict.

The elements of aggravated kidnapping are:

1) a person

2) intentionally or knowingly

3) abducts

4) another person

5) with the intent to terrorize a third person.

V.T.C.A. Penal Code, Sec. 20.04.

Appellant maintains that terror is a fear greater than that produced by mental torture. Appellant cites authority defining "terror" as that which is agitating and excessive fear, which usually benumbs the body and mind. *Arto v. State*, 19 Tex.App. 126 (1885); *State v. Gunzelman*, 210 Kan. 481, 502 P.2d 705 (1972); *Armstrong v. Ellington*, 312 F.Supp. 1119 (1970).

■ Webster's New Collegiate Dictionary defines "terror" as "to fill with intense fear or to coerce by threat or force." *Rodriguez v. State*, 646 S.W.2d 524 (Tex.App.—Hous. [1st Dist.], 1982).

"One's acts are generally reliable circumstantial evidence of one's intent." *Rodriguez v. State,* supra at 527. The aforementioned facts demonstrate that appellant clearly had the intent to terrorize Ted Murf Rogers by her actions. She expressed these intentions specifically on more than one occasion when she told Leard and Montgomery that she wanted to cause Jo Lynn to disappear in order to mentally torture Ted Rogers—to get revenge. These facts coupled with the circumstantial proof of Jo Lynn's abduction show the intent. No magic words nor incantations on part of the witness is necessary to establish "terror."

■ Next we turn our attention to the proof of abduction and restraint. Abduct is defined as "means to restrain a person with the intent to prevent his liberation by (A) secreting and holding him in a place where he is not likely to be found,...." V.T.C.A. Penal Code, Sec. 20.01(2). Restrain is defined as "means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. Restraining is 'without consent' if it is accomplished by: (A) force, intimidation, or deception; ...." V.T.C.A. Penal Code, Sec. 20.01(1). "It is clear that our law imposes no minimal requirement for restraint other than the interference with the victim's liberty be substantial." *Rodriguez,* supra. In *Sanders v. State,* 605 S.W.2d 612 (Tex.Cr.App.1980), abduction was proved by a showing that the defendant stole an automobile with a young boy discovered therein. In *Phillips v. State,* 597 S.W.2d 929 (Tex.Cr.App.1980), the defendant gave two hitchhikers a ride, and before letting them out, restrained them at gunpoint and forced them to commit fellatio on him. This temporary restraint was sufficient to constitute the "restraint" requirement. *Rodriguez,* supra. In short, there is no time limitation: the proper measure is that the interference of liberty must be substantial.

■ The circumstantial evidence in the present case is sufficient to show that appellant substantially interfered with the liberty of Jo Lynn Rogers, by use of force, with the intent to prevent her liberation by secreting and holding her in a place where she was not likely to be found. Appellant admits going to Tatum and seeing Jo Lynn. Horton heard a scream and saw a body lying motionless on the ground. He also saw the appellant's car speed away with the clothing of the body hanging from the car. That same morning, appellant was seen with fresh scratch marks on her neck. Prior to that day, appellant had mentioned her plans and intent to commit the crime. Jo Lynn Rogers has not yet been found.

Viewing this evidence in the light most favorable to the verdict, we find that " 'any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Griffin v. State,* 614 S.W.2d 155 [ (Tex.Cr.App.1981) ].' " *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App. 1983). Since the evidence supports no inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is a rational finding. This ground of error is overruled.

Appellant contends in her second ground of error that "the trial court erred in overruling appellant's motion for mistrial because the State had called appellant's spouse to the stand to testify against her." The appellant, by way of pretrial motion, requested that the State give an opening statement outlining the State's case-in-chief. In this statement, the prosecutor named Ted Murf Rogers as a witness, and described what testimony Rogers was expected to relate. Ted Rogers was called as a witness by the prosecution during their case-in-chief. He stated his name and appellant objected, claiming the witness was incompetent to testify.[2] Defense counsel then questioned Rogers out of the presence of the jury. Rogers testified that he and appellant had been married but had since been divorced. Further testimony was adduced that the divorce was on appeal at the

2. Art. 38.11 V.A.C.C.P.

time of trial. The court ruled that the witness was incompetent to testify. The witness was dismissed and the jury was brought back into the courtroom. Appellant contends that this constituted reversible error, relying on *Johnigan v. State,* 482 S.W.2d 209 (Tex.Cr.App.1972). In *Johnigan,* we held that reversible error results when the State calls a defendant's spouse, forcing the defendant to object in the presence of the jury, when such is done in such a manner as to convey to the jury the impression that the spouse, if allowed to testify, would rebut defensive testimony previously given.

■ We do not believe *Johnigan* controls this case. We find the rule established in *Clayton v. State,* 465 S.W.2d 769 (Tex.Cr.App.1971) is more appropriate. In *Clayton,* the prosecuting attorney asked to have the wife of the defendant sworn in and that the State might call her to the stand was improper but was not reversible error.[3] In *Clayton,* the incompetent witness was not called upon to rebut any defensive testimony. While the witness in the case before us was called to the stand, the jury was not left with the impression that the witness-spouse would refute the appellant's case. The witness was called during the State's case-in-chief, not on rebuttal. No defensive theory had been asserted. In addition, in his opening statement, the prosecutor named Rogers and described his expected testimony. Appellant did not object and apparently the State had no idea the testimony would be objectionable. Appellant's ground of error is overruled.

Appellant contends that the court's charge was fundamentally erroneous in that it permitted the jury to convict appellant on a theory not alleged in the indictment.

The indictment, in pertinent part, charges that appellant did:

... with intent to prevent the liberation of Jo Lynn Rogers, and without her con-

sent, restrain the said Jo Lynn Rogers by secreting and holding her in a place where she was not likely to be found, and the said Faelyn Ann Rogers intentionally and knowingly abducted the said Jo Lynn Rogers *with the intent to terrorize Ted Murf Rogers,* .... [4]

The charge to the jury states, in pertinent part, as follows:

1.

A person commits the offense of aggravated kidnapping if she intentionally or knowingly abducts another person with the intent to terrorize *her or a third person.*

※ ※ ※ ※ ※ ※

3.

Now if you find from the evidence beyond a reasonable doubt that on or about the 20th day of November, 1979, in Rusk County, Texas, the defendant, FAELYN ANN ROGERS, did then and there, with intent to prevent the liberation of Jo Lynn Rogers, and without her consent, restrain the said Jo Lynn Rogers by secreting and holding her in a place where she was not likely to be found, and the said FAELYN ANN ROGERS intentionally and knowingly abducted the said Jo Lynn Rogers *with the intent to terrorize Ted Murf Rogers,* then you will find the defendant guilty of aggravated kidnapping.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reason doubt thereof, you will acquit the defendant of aggravated kidnapping.

The appellant asserts that by switching the gender in paragraph one of the charge, the trial court's charge expanded the scope of theories upon which the appellant could be found guilty—that she terrorized Ted Murf Rogers, Jo Lynn Rogers, or both.

■ The Code Construction Act, Vernon's Ann.Civ.Stat., Art. 5429b–2, Sec.

---

**3.** See footnote two in *Johnigan v. State,* supra; *Espericueta v. State,* 649 S.W.2d 336 (Tex.App. 13 Dist. 1983); *Stewart v. State,* 587 S.W.2d 148 (Tex.Cr.App.1979).

**4.** All emphasis added by this writer.

2.02(c) hold that words of one gender include the other gender. The switching of "her" for "him", by itself, does not amount to error. However, we believe the jury's difficulty over the charge does not stem from this gender switch.

The jury sent the trial court a note which read:

Judge Colley,

The purpose of this request is to clarify section one (1) and section three (3). It is believed that section three (3) is more restrictive with regard to the charge of aggravated kidnapping.

Section one (1) states that 'A person commits the offense of aggravated kidnapping if she intentionally or knowingly abducts another person with the intent to terrorize *her or a third person.*' It is the underlined phase [sic] that seems to be less restrictive than Section three (3). Section three (3) in part states that 'intent to terrorize Ted Murf Rogers, ...' Our question is—can the defendant be found guilty or not guilty, as charged, if she intended to terrorize Jo Lynn Rogers, Ted Rodgers [sic] or both?

Or should we only consider if the defendant intended to terrorize Ted Rogers?

The trial court, in its First Supplemental Charge, instructed the jury:

In response to your communication you are advised to read the Court's Charge in its entirety and be governed by the instructions therein contained.

The jury was not confused by the choice of gender. Rather, they were confused by the broad abstract paragraph and the more "restrictive" application paragraph.

■ It is proper for the trial court to set forth in the jury charge the general law defining the offense charged and then make a direct and pertinent application of the law to the facts in the case. *Toler v. State,* 546 S.W.2d 290 (Tex.Cr.App.1977); *Martinez v. State,* 157 Tex.Cr.R. 603, 252 S.W.2d 186 (Tex.Cr.App.1952).

No evidence was presented to the jury concerning intent to terrorize Jo Lynn Rog-

ers. Nor was any evidence presented to the jury concerning intent to terrorize both Jo Lynn Rogers and Ted Murf Rogers. The supplemental charge sent to the jury advises the jury to read the charge "in its entirety and be governed by the instructions therein contained." The application paragraph concisely sets forth what the jury must find from the evidence beyond a reasonable doubt in order to convict appellant. The charge, read in its entirety, and in light of the specificity of the application paragraph and in light of the supplemental charge, leads any rational person to realize that a conviction could only be obtained on the theory of "intent to terrorize Ted Murf Rogers." Appellant's ground of error number three is overruled.

In her fourth ground of error, appellant contends that the trial court erred in not granting her request for a charge on the lesser included offense of kidnapping. Appellant asserts that the State failed to establish the aggravating element of "terrorize Ted Rogers", and therefore the lesser included offense of kidnapping should have been included in the charge. Appellant contends that Outler's testimony concerning appellant's exculpatory statement negates the "terrorize" element, which entitled appellant to a charge on the lesser included offense. *Briceno v. State,* 580 S.W.2d 842 (Tex.Cr.App.1979); *Hazel v. State,* 534 S.W.2d 698 (Tex.Cr.App.1976).

■ We utilize a two-step analysis to determine whether a charge on a lesser included offense is required. First, the lesser included offense must be included within the proof necessary to establish the charged offense. Second, there must be evidence in the record that if the defendant is guilty, he is not guilty of the charged offense, but only of the lesser offense. *Salinas v. State,* 644 S.W.2d 744 (Tex.Cr.App.1983); *Royster v. State,* 622 S.W.2d 442 (Tex.Cr.App.1981).[5]

■ Kidnapping is a lesser offense of aggravated kidnapping. See Art. 37.09, V.A.C.C.P. The first step is met. Appellant relies on the exculpatory statement

---

**5.** See also *Broussard v. State,* 642 S.W.2d 171 (Tex.Cr.App.1982); *Eldred v. State,* 578 S.W.2d

that, if believed, asserts guilt of no crime at all. The exculpatory statement plainly states that Jo Lynn Rogers voluntarily accompanied the appellant and exited the car at her own insistence. This does not constitute evidence of kidnapping. "If a defendant presents evidence that he committed no offense at all, or if he presents no evidence, a charge on the lesser offense is not required. *Eldred v. State*, 578 S.W.2d 721 (Tex.Cr.App.1979)." *Hall v. State*, 630 S.W.2d 709 (Tex.App.—Hous. [1 Dist.], 1982). Appellant relies solely on the statement as evidence of the lesser included offense. This statement is no such evidence. No evidence was presented to establish kidnapping. We overrule her ground of error.

Appellant's fifth and final ground of error is that the State failed to disprove appellant's exculpatory statement which entitled her to an acquittal. The exculpatory statement was produced by Outler during the State's case-in-chief. The pertinent passage is as follows:

Q. I will ask you to state to the jury, Mrs. Outler, what the Defendant told you on that occasion concerning the incident?

A. She said she had gone down to see Ted and that she was surprised that he was not at home and that Jo Lynn was there, and that she and Joe [sic] Lynn had got in Faelyn's car to go to confront Ted because the thing was that he was lying to both of them and that Faelyn made a wrong turn and as she was making a U-turn to get back on the correct road or street, Jo Lynn jumped out of the car and took off through a field.

At the close of the State's case, the defense rested without presenting any evidence. When the State produces an exculpatory statement by the appellant and does not refute it, either directly or indirectly, the defendant is entitled to an acquittal. *Banks v. State*, 119 S.W. 847 (Tex.Cr.App.1909). Appellant relies on the rule enunciated in *Palafox v. State*, 608 S.W.2d 721 (Tex.Cr.App.1979); *McBrayer v. State*, 504 S.W.2d 445 (Tex.Cr.App.1974).

177 (Tex.Cr.App.1979). The rule is two-fold: first, the statement must amount to an admission; second, it must amount to an assertion which exculpates the appellant from the charged offense. *Palafox,* supra; *Davis v. State*, 474 S.W.2d 466 (Tex.Cr. App.1971); *Brown v. State*, 475 S.W.2d 938 (Tex.Cr.App.1971); *Simon v. State*, 488 S.W.2d 439 (Tex.Cr.App.1972). To invoke the rule, the appellant must admit to committing the acts which constitute the gravaman of the offense.

The above-mentioned passage is not an admission of acts constituting any offense. When the appellant's statement is entirely exculpatory with no admission of guilt, then the rule does not apply. *Trevino v. State*, 87 S.W. 1162 (Tex.Cr.App.1905); *Dixon v. State*, 128 Tex.Cr.R. 584, 83 S.W.2d 328 (Tex.Cr.App.1935).

The record is replete with testimony and evidence tending to refute, directly and indirectly, the truth of the statement. We overrule this ground of error.

The judgment in this cause is affirmed.

ONION, P.J., and CLINTON, McCORMICK, MILLER and CAMPBELL, JJ., concur in result.