

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,834

**STANLEY LAMAR GRIFFIN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM CAUSE NO. 10-05176-CRF-361
### IN THE 361ST JUDICIAL DISTRICT COURT
### BRAZOS COUNTY

JOHNSON, J., delivered the opinion of the Court in which KEASLER, HERVEY, ALCALÁ, RICHARDSON, and NEWELL, JJ., joined. YEARY, J., filed a dissenting opinion in which KELLER, P.J., and MEYERS, J., joined.

### O P I N I O N

In June 2012, a jury convicted appellant of the capital murder of Jennifer Hailey committed on or about September 19, 2010. TEX. PENAL CODE § 19.03(a)(2). Based on the jury's answers to the special issues set forth in the Texas Code of Criminal Procedure article 37.071, sections 2(b) and

2(e), the trial judge sentenced appellant to death. Art. 37.071, § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071, § 2(h). After reviewing appellant's points of error, we find that the record does not support the offense of capital murder. Consequently, we reverse the trial court's judgment and sentence of death and remand this cause to the trial court for reformation of the judgment and a new punishment hearing.

## FACTS

Appellant was charged with intentionally causing Jennifer Hailey's death while he was in the course of committing or attempting to commit the offense of kidnapping against Cameron Lockhart. The trial record shows that appellant met Jennifer[2] and her nine-year-old son, Cameron, when Jennifer and appellant's then-girlfriend, Andrea Copelyn, worked at the same medical clinic. Jennifer and Cameron sometimes saw appellant at the clinic when he picked up Copelyn after work. They would also see appellant when Copelyn's daughter babysat Cameron in the home where Copelyn, her three children, and appellant lived. Appellant and Copelyn had been living together, but had separated. However, Copelyn and appellant continued to have a romantic relationship, and appellant continued to interact with Copelyn's co-workers at the clinic.

For reasons that do not appear in the record, on September 19, 2010, around 10:00 p.m., appellant asked an acquaintance to drop him off near a unnamed friend's apartment. Once at the requested apartment complex, appellant went to the two-bedroom apartment where Jennifer and Cameron lived. Appellant had never been to their apartment before. The record reflects that there were pry marks and other signs of forced entry on the frame of the door into Jennifer's apartment,

---

[1] Unless otherwise indicated all references to Articles refer to the Code of Criminal Procedure.

[2] To avoid confusion, we refer to Jennifer Hailey and other members of the Hailey family by their first names.

but no one could say when the marks were made.

Jennifer's son, Cameron, was the only witness to the assault on Jennifer. He had gone to bed at 9:00 p.m., but after sleeping for a couple of hours, got up to get a drink of water. As he walked toward the kitchen, he saw appellant and Jennifer on the floor in the living room. Appellant was on top of Jennifer, and it seemed to Cameron that appellant was hugging her. Jennifer was face down, and her hand was moving a little bit. Cameron called out to her. Appellant appeared startled and partially rose. Cameron asked, "Stanley, what are you doing?" Appellant replied that he was not Stanley; rather, he was "Michael from Huntsville." Cameron continued to address appellant as Stanley. Appellant told Cameron to go back to bed, and Cameron did.

Ten or fifteen minutes later, Cameron again left his bedroom. As he stood in the hallway, he could see Jennifer lying face up on the floor of her bedroom. He knew from experience that Jennifer fainted easily, but could not tell from that distance whether she had fainted or was hurt. Cameron told appellant that he had to go to the bathroom, although that assertion was only a way to get nearer to his mother. Although there was a bathroom across the hall from Cameron's bedroom, Cameron chose to use the bathroom in his mother's room. He was thus able to get a closer look at his mother, but he was still unable to ascertain whether she was hurt.

As Cameron walked out of his mother's room, appellant told Cameron that he wanted to "chill" with him. Hoping that appellant would leave, Cameron told appellant that he was going back to bed. Cameron walked toward his bedroom, but appellant grabbed him from behind, choked him, and then repeatedly struck Cameron's jaw, back, and neck with a garden trowel that appellant had retrieved from the "washroom." Cameron passed out in the hallway. When Cameron awoke, he was lying on the living-room floor under a comforter that had been taken from his bed, and appellant was

gone from the apartment. Jennifer was still lying on the floor of her bedroom. Cameron could not awaken her and thought that she was dead. He called his grandmother, Nancy Hailey, around 5:00 a.m. and asked for help. Nancy then called 911 and her son, Jayson Hailey.

Jayson reached Jennifer's apartment shortly before emergency responders did. After much pounding on the door by Jayson, Cameron opened it for him and told him what had happened. Jayson went to Jennifer's bedroom and picked her up, intending to take her to the hospital, but as he carried her, he concluded that she needed immediate care. He put her down near the front door and prepared to begin CPR. When he moved Jennifer's bloodied hair away from her face, he saw that her face was purple and swollen and that her tongue was blocking her airway. When the EMTs arrived, they took over attending to Jennifer. They also saw a big gash on Cameron's neck and smaller gashes on the side of his face and therefore transported Cameron to the hospital. He had lost a significant amount of blood, but he survived his injuries.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, appellant asserts that the evidence was legally insufficient to prove that he intentionally murdered Jennifer in the course of kidnapping Cameron. Appellant concedes that the evidence is legally sufficient to show that he intentionally murdered Jennifer, but he asserts that the evidence did not prove capital murder because it did not show that appellant committed the murder to facilitate a kidnapping: "Nothing suggests that appellant strangled Jennifer Hailey merely to disable or harm her so that he could abduct Cameron Lockhart." Appellant also concedes that the evidence proved that he attacked Cameron in order to delay the discovery of Jennifer's murder, but he also asserts that the evidence demonstrated that Jennifer "had been murdered before appellant said or did anything to Cameron Lockhart."

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Adames v. State,* 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This standard recognizes the fact finder's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from it. *Id.* (citing *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This Court determines whether the necessary inferences made by the fact finder are reasonable, based upon the cumulative force of all of the evidence. *Id.* (citing *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)).

Texas Penal Code section 19.03(a)(2) provides that a person commits capital murder if the person commits murder, as defined under section 19.02(b)(1) (intentionally or knowingly causing the death of an individual), and the person intentionally commits the murder in the course of committing or attempting to commit a specified offense, in this case, kidnapping. The parties agree that, as used in Texas Penal Code section 19.03(a)(2), "in the course of committing" is defined as conduct occurring during an attempt to commit, during the commission of, or in immediate flight from, the forbidden behavior. *See, e.g., Rivera v. State,* 808 S.W.2d 80, 93 (Tex. Crim. App. 1991).

Texas Penal Code section 20.03(a) provides that a person commits kidnapping if he intentionally or knowingly abducts another person. "Abduct" means to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force. TEX. PENAL CODE § 20.01(2). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. TEX. PENAL CODE §

20.01(1). Restraint is without consent if it is accomplished by: (A) force, intimidation, or deception; or (B) any means, including acquiescence of the victim, if he is a child less than fourteen years of age and the parent, guardian, or person or institution acting in *loco parentis* has not acquiesced in the movement or confinement. *Id.*

A kidnapping becomes a completed offense when (1) a restraint is accomplished, and (2) there is evidence that the actor had the specific intent to prevent liberation by secretion or the use or threatened use of deadly force. *Santellan v. State,* 939 S.W.2d 155, 162 (Tex. Crim. App. 1997) (citing *Mason v. State,* 905 S.W.2d 570, 575 (Tex. Crim. App. 1995)). The law imposes no minimal requirement for restraint other than the interference with the person's liberty be substantial. *Earhart v. State,* 823 S.W.2d 607, 618 (Tex. Crim. App. 1991) (citing *Rogers v. State,* 687 S.W.2d 337, 342 (Tex. Crim. App. 1985)). Nothing in the kidnapping statute requires the state to prove that a defendant moved a victim a certain distance or held him for a specific length of time. *Reyes v. State,* 84 S.W.3d 633, 636-37 (Tex. Crim. App. 2002) (citing *Hines v. State*, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002)). The statute does require, however, evidence of both restraint and intent to prevent liberation by secreting or holding him in a place where he is not likely to be found or using or threatening to use deadly force.

The evidence is insufficient to show that appellant murdered Jennifer in the course of kidnapping Cameron, but is sufficient to show a murder, followed by a number of other possible offenses, including aggravated assault, injury to a child, or attempted murder. Appellant, while choking Jennifer, told Cameron to go to his room, and Cameron complied. But Cameron was not restrained under the language of the statute; he was free to move about the apartment, and he did so. He returned to his bedroom, then left it again, told appellant that he needed to go to the bathroom,

then went to the bathroom that was in his mother's room rather than the one closest to his room. As Cameron left his mother's bedroom, he told appellant that he was going back to bed. Only at that point did appellant grab Cameron and restrict his freedom of movement.

More tellingly, it was only after the murder, with Jennifer dead on the floor of her bedroom, that appellant restricted Cameron's movements without consent and interfered substantially with his freedom of movement. TEX. PENAL CODE § 20.01(1)(B)(i). Certainly, appellant used force in his assault on Cameron, but the record does not show any specific intent to hide Cameron or to confine him. Appellant's intent at that time was not to kidnap Cameron, but rather to kill him with the trowel and thereby remove him as a possible witness against appellant for the already completed murder of Jennifer, and appellant's use or threatened use of deadly force was for that purpose only. *See, e.g., Laster v. State,* 275 S.W.3d 512, 524-25 (Tex. Crim. App. 2009) (a defendant's intent may be discerned from the surrounding circumstances). To equate the mere use of force with kidnapping is to make every assault into kidnapping. *See* TEX. PENAL CODE § 20.01(2)(A), (B); *see also Brimage v. State,* 918 S.W.2d 466, 475-76 (Tex. Crim. App. 1994) (to prove kidnapping, the State must prove that a restraint was completed and that the actor evidenced an intent to prevent liberation by either secretion or deadly force).

Appellant argues that the evidence was insufficient to prove capital murder because it failed to show that he committed the murder to facilitate the kidnapping. However, the plain language of Section 19.03(a)(2) contains no general requirement that in order to constitute capital murder, the murder must be committed to facilitate the underlying felony offense. We have previously rejected arguments that the evidence must show that the murder was committed in furtherance of the underlying felony. *See, e.g., Dorough v. State,* 639 S.W.2d 479, 480-81 (Tex. Crim. App. 1982)

(evidence of capital murder was sufficient when defendant drove victims into the desert, raped female victim, told victims to walk away, then murdered male victim); *Moore v. State,* 542 S.W.2d 664, 674-75 (Tex. Crim. App. 1976) ( the legislature did not intend for a defendant to escape capital-murder charges when he kidnapped victim from scene of robbery and killed her to prevent her testimony). In each of the above cases, the murder was committed during or after the commission of the charged underlying felony. That is not the case here.

Appellant correctly observes that a felony that is committed as an afterthought and unrelated to the murder is not sufficient to prove capital murder under Section 19.03(a)(2). *See, e.g., Herrin v. State,* 125 S.W.3d 436, 440-41 (Tex. Crim. App. 2002) (evidence of capital murder was insufficient when there was no evidence that appellant intended to kidnap victim before or during intentional murder). In this case, appellant assaulted Cameron only after Jennifer's murder was completed, seemingly to eliminate a witness to that murder. *See id.* There is nothing in the record to indicate that appellant's intent when he entered Jennifer's apartment was to kidnap Cameron and that, during that attempt, appellant murdered Jennifer. Instead, the record reveals that appellant killed Jennifer before he became aware that Cameron was in the apartment and awake. After the murder, appellant did not seek Cameron out and attempt to abduct him; rather, concerned for his mother, Cameron went looking for her and found his mother and appellant in his mother's bedroom. Until appellant seized Cameron and assaulted him with the trowel, Cameron was no more restrained than he was before appellant entered the apartment. We find that Cameron was assaulted but not kidnapped. Because the murder was complete before the attack on Cameron, and because Cameron was not restrained by appellant before appellant attacked Cameron with the trowel, the evidence does not support a conviction for capital murder.

In *Thornton v. State*, 425 S.W.3d 289, 295-300 (Tex. Crim. App. 2014), we discussed the development of our jurisprudence regarding the availability of a reformation of a judgment after a finding of insufficient evidence. In *Britain v. State*, 412 S.W.3d 518, 521 (Tex. Crim. App. 2013), we pointed out that, when the evidence is legally insufficient only as to an aggravating element, it is appropriate for an appellate court to strike the unproved aggravating element and reform the judgment to reflect guilt of a lesser-included offense. And in *Thornton*, 425 S.W.3d at 300, we explained that, when the lesser-included offense is one that the jury necessarily found and the evidence is sufficient to support that lesser-included offense, the appellate court is required "to avoid the 'unjust' result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense." This case does not involve a lesser or greater culpable mental state, but rather insufficient evidence to prove the alleged aggravating element that raised Jennifer's murder to capital-murder.

In this case, the jury charge included an instruction regarding the lesser-included offense of murder: whether appellant was guilty of intentionally causing Jennifer Hailey's death. This lesser-included-offense instruction did not include any reference to the aggravating element–causing a death in the course of committing or attempting to commit the offense of kidnapping against Cameron Lockhart.

Appellant concedes that the evidence is legally sufficient to show that he intentionally murdered Jennifer, and our review of the evidence confirms that the evidence was sufficient for a rational jury to find that appellant intentionally caused the death of Jennifer Hailey by strangling her. We conclude that the jury necessarily found that appellant committed the lesser-included offense of murder and that the evidence is sufficient to support such a finding, thus reformation of the judgment

is appropriate.

We find that the evidence does not support a verdict of guilty as to capital murder and that, based upon the judgment's reformation to reflect a conviction for murder, punishment must be reassessed. Accordingly we remand this case to the trial court for reformation of the judgment to reflect a conviction for murder and for a new punishment trial. *See Herrin*, 125 S.W.3d at 443-44 (Tex. Crim. App. 2002). In these circumstances, we need not address the remainder of appellant's points of error, all of which assert error during the punishment proceedings and are rendered moot by our reformation of the conviction and remand for a new punishment hearing.

Delivered: January 27, 2016
Publish