**Opinion filed November 12, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00413-CR

_____

## TAEZER THOMPSON, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR25124**

### M E M O R A N D U M   O P I N I O N

In 2017, Taezer Thompson, Appellant, waived his right to an indictment and pled no contest to the charge, by information, of impersonating a public servant, a third-degree felony. The trial court entered an order of deferred adjudication and placed Appellant on community supervision for a term of ten years. Some two and a half years later, the State filed a motion to adjudicate Appellant guilty of the 2017 offense of impersonating a public servant. The State alleged that Appellant had not only failed to perform community service restitution as required, but also had committed a new offense: unlawful restraint. Appellant pled not true to both allegations. The trial court found the State's allegations to be true, adjudicated

Appellant guilty of the 2017 offense, and assessed his punishment at confinement for three years in the Institutional Division of the Texas Department of Criminal Justice.

The trial court denied Appellant's motion for a new trial, where it was argued that any evidence of the new alleged offense and his lack of community service restitution was insufficient to sustain the adjudication. Appellant further claimed to possess evidence not admitted at the adjudication hearing that proved him innocent of the new offense. While the trial court refused to receive the evidence during the hearing on the motion for new trial, Appellant made a Bill of Exception in which he presented alleged exculpatory evidence, including an audio file and a video file, that he argued his original counsel had failed to introduce during the hearing on the State's motion to adjudicate. Appellant argues on appeal (1) that the evidence was legally insufficient to find that he committed the newly charged offense of unlawful restraint and (2) that he received ineffective assistance of counsel at the hearing on the State's motion to adjudicate. We affirm.

*Background Facts*

At the adjudication hearing, the State presented four witnesses giving evidence relevant to Appellant's failure to abide by the terms of his community supervision: Amber Boswell, Appellant's probation officer; the victim, Tammy Martin; and two Stephenville police officers, Andrew Honecker and Danna Parr. Boswell testified that Appellant was required, per the conditions of his community supervision, to perform 160 hours of community service, 8 hours per month, beginning on May 20, 2017. She further testified that at the time the State filed its motion to adjudicate, Appellant had not completed *any* of his required community service hours. Boswell further testified that only recently had Appellant made a large donation to a food bank to satisfy all of his outstanding community service hours.

Tammy Martin testified that she was on her way home from the airport at about 2:00 a.m., driving down a one-lane street when she saw a car taking up the left side of the single lane with its hazard lights flashing. The vehicle was a Taxiville cab belonging to one of Appellant's employees. As she proceeded to pass the cab on the right side of the single lane, Appellant abruptly propelled his vehicle into the road, emerging from an intersecting street, and blocked her path forward. The vehicle that had its hazard lights on pulled up and blocked Martin in on the driver's side of her vehicle. Martin was initially unable to make out details about Appellant's vehicle because Appellant was using a high-powered white light to shine into the cabin of her vehicle and into her eyes. Martin testified that at first she believed that Appellant must be affiliated with the sheriff's office because his vehicle was equipped with a high-powered light bar on top. Martin explained that Appellant rolled his window down and asked her: "Do you enjoy following people?" Once she realized that Appellant was not affiliated with law enforcement, she turned sharply to the right and drove onto the intersecting street, running over a one-foot-high curb in the process, which damaged the undercarriage of her vehicle on the passenger side. Martin testified that she would have just gone home, but the vehicles that had blocked her in proceeded to follow her. She drove to the police department and went inside. Martin testified that she was unsure how long the blocking incident lasted, but she guessed that it might have been ten to fifteen minutes.

Officers Honecker and Parr both testified that Martin was "visibly shaking" when they interviewed her about the incident. Officer Honecker testified that Appellant told him that the incident transpired after one of his Taxiville employees, Susan Bertram, called him because she believed that a car had been following her, at which point Appellant instructed her to meet him at his house, near where the incident occurred. Officer Parr testified that Martin indicated that Appellant had given her the impression that he was a police officer.

3

Appellant only called one witness: his wife, Emily Thompson. She testified about the location where the incident took place, and she said that the curb over which Martin drove to effectuate her escape was about a foot tall. After that, Appellant rested.

In his closing argument, Appellant's trial counsel argued that Appellant had cured the defect regarding his community service hours by making a donation and that the State had failed to meet its burden to prove that Appellant committed unlawful restraint. The State responded, *inter alia*, that the failure to perform the community service hours when required was a violation and that any late effort to cure it by donation is only relevant to sentencing. The State also argued that the trial court had sufficient evidence to find that Appellant had committed a new offense because any amount of restraint is sufficient to constitute unlawful restraint, "even one to two minutes."

After Appellant was adjudicated and his community supervision was revoked, Appellant filed a motion for new trial. Before the hearing on that motion, Appellant fired his original trial attorney. During the hearing, Appellant argued that his previous trial attorney was given exculpatory evidence before the adjudication hearing, including audio and video files that allegedly (1) confirmed Appellant's explanation as to why he stopped Martin and (2) impeached Martin's assertion that the stop lasted about ten to fifteen minutes. Appellant's previous trial attorney chose not to introduce that audio/video information at the adjudication hearing. Appellant's new trial counsel never reached out to former trial counsel for an explanation of his decision not to proffer that evidence.

The trial court denied Appellant's request to introduce this evidence at the hearing on his motion for a new trial, but permitted its introduction as part of a Bill of Exception for purposes of Appellant's appeal. In Appellant's Bill of Exception, he testified that he expected his original trial attorney to present the evidence that

4

Appellant gave him and was surprised when he did not do so. Appellant further testified that when asked why he failed to introduce any of the evidence he was given, Appellant's original trial attorney responded that "there would be a lot of time and difficulty in setting up the videos" and that he was not even sure "that this was going to go forward that day." The audio and video files were admitted as part of Appellant's Bill of Exception, for purposes of arguing that his original trial attorney had rendered ineffective assistance of counsel. The trial court denied Appellant's motion for a new trial.

The audio file contains a conversation between Appellant and two of his Taxiville employees, during which one of those employees, Susan Bertram, complains that a car had been following her. Appellant instructed the other employee in the conversation, Trisha Gomez, to follow Bertram and the car tailing her, and for both to proceed to McCart Street and Frey Street, where the incident occurred. The audio file reveals that after the altercation, Gomez followed Martin to the police station, where she then waited for Appellant and Bertram to arrive as well. The video file appears to demonstrate that the two Taxiville cars involved in the altercation with Martin were only in the same location for a couple of minutes, at most.

*Discussion*

*I. Issue One – The evidence was sufficient to support the trial court's revocation of Appellant's community supervision based upon the trial court's findings that Appellant committed the offense of unlawful restraint and that Appellant failed to timely complete his required community service per the court's terms and conditions.*

A. *Standard of Review*

The violation of a single condition of community supervision is sufficient to support a revocation. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). Thus, to prevail on appeal, Appellant must successfully challenge all of

5

the trial court's findings that support revocation. *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see Jones v. State*, 571 S.W.2d 191, 193–94 (Tex. Crim. App. [Panel Op.] 1978). In this case, Appellant's challenge is that the evidence was insufficient to support the trial court's finding that Appellant committed the new offense of unlawful restraint. Appellant does not challenge the trial court's finding that Appellant failed to comply with the community service condition of his community supervision. While that finding alone is sufficient to affirm the trial court's judgment, we nevertheless proceed to consider Appellant's sufficiency claim.

We review a sufficiency of the evidence in cases like this, where the appellant challenges the sufficiency of the evidence upon which the trial court made a finding during a hearing to adjudicate and revoke community supervision, under a less rigorous standard than that set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). In *Hacker*, the Texas Court of Criminal Appeals explained, at length, that:

> To convict a defendant of a crime, the State must prove guilt beyond a reasonable doubt, but to revoke probation (whether it be regular probation or deferred adjudication), the State need prove the violation of a condition of probation only by a preponderance of the evidence. . . .
>
> The State's burden of proof informs the appellate standard of review for legal sufficiency of the evidence. When the burden of proof is "beyond a reasonable doubt," an appellate court reviews the evidence in the light most favorable to the prosecution and asks whether a rational jury could have made the requisite finding beyond a reasonable doubt. For issues governed by the less rigorous burden of proof of "preponderance of the evidence," the appellate standard of review for legal sufficiency is also less rigorous. For probation-revocation cases . . . the appellate standard of review [i]s whether the trial court abused its discretion.

6

*Id.* (footnotes omitted). We defer to the trial judge's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Id.* at 865.

A person commits the offense of unlawful restraint when he intentionally or knowingly restrains another person. TEX. PENAL CODE ANN § 20.02 (West 2019). The term "restrain" in this provision means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or confining the person." *Id.* § 20.01. Restraint is without consent if it is accomplished by force, intimidation, or deception. *Id.* In order for such restraint to constitute a "substantial interference," it is not necessary for the State to prove that a defendant restrained the victim for any specific length of time. *Hines v. State*, 75 S.W.3d 444, 446–47 (Tex. Crim. App. 2002). Thus, "there is no specific time requirement for determining whether a restraint has taken place." *Id.* at 447–48. Rather, it is up to the factfinder, in this case the trial judge, "to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place." *Id.* at 448. The trial judge makes this determination "by looking at all of the circumstances surrounding the offense." *Id.*

B. *Analysis*

Appellant contends that the victim in this case, Tammy Martin, was not restrained because the movement of her person was never restricted or confined and because her liberty was not substantially interfered with. Appellant supports these contentions by arguing that the State failed to present any evidence demonstrating that Appellant prevented Martin from putting the car in reverse or exiting her vehicle and simply walking away. Appellant further argues that it is significant that Appellant never instructed Martin to stay in her car. The State, in response, argues that Appellant did restrain Martin, both by force and by deceit. The State emphasized that Appellant physically blocked Martin from proceeding forward on

7

the street in her vehicle and deceived her into believing he was law enforcement by shining a powerful light into her car and in her face during the encounter. The State further contends that it is unreasonable to expect Martin to leave the relative safety of her vehicle in the presence of "several strangers in vehicles accosting her at two in the morning." We agree. In any event, the trial court's finding that Appellant committed the new offense of unlawful restraint must be affirmed if there is evidence to support that finding.

At around 2:00 a.m., Appellant, in coordination with an employee under his direction, abruptly blocked off a one-lane street to deliberately halt Martin's vehicle in its forward progress. Throughout the incident, Appellant shined a powerful white light into Martin's vehicle, obstructing her ability to see what was happening. Martin testified that Appellant's use of the powerful white light gave her the impression that Appellant was affiliated with the sheriff's office. If police, as believed, had abruptly stopped a person's vehicle by cutting it off from the front and immediately shining powerful lights into the person's vehicle, that person would not likely believe that they were at liberty to reverse the vehicle and drive away, nor to exit and abandon the vehicle on foot. Appellant's contention that Martin was not restrained because she could have put her vehicle into reverse is without merit inasmuch as performing a potentially dangerous and possibly illegal maneuver with one's vehicle is hardly a reasonable expectation under ordinary circumstances in which a person is not being unlawfully restrained. Eventually, Martin did take extreme measures in order to make her escape, upon discovering that Appellant was not affiliated with law enforcement, driving over a one-foot-tall curb and damaging the undercarriage of her car on the passenger side. Furthermore, even if Martin had not thought that Appellant was affiliated with law enforcement, we are unpersuaded that anyone would feel safe exiting their vehicle at 2:00 a.m. after being suddenly

8

cut off in mid traffic, blinded by a bright light invading the cabin of their vehicle, and accosted by the other driver.

It is immaterial whether the stop lasted fifty seconds or fifteen minutes, because there is no minimum time requirement for a nonconsensual restraint to constitute a substantial interference with someone's liberty. *Hines*, 75 S.W.3d at 446–47. What is required of the trial court is that it consider the surrounding facts and circumstances and determine whether the restraint rose to the level of a substantial interference with the victim's liberty. *Id.* at 448. We presume that the trial court resolved any uncertainties in favor of the finding it made, and we defer to that finding so long as there is evidence to support it. The details recounted above, which must be reviewed by us in the light most favorable to the prosecution, constitute evidence from which the trial court could have found by a preponderance of the evidence that Appellant committed the new offense of unlawful restraint. *See Hacker*, 389 S.W.3d at 864–65. There is enough within the record to sustain the trial court's finding on that matter.

Even if the recounted facts and circumstances were insufficient to support the trial court's finding that Appellant committed the new offense of unlawful restraint, Appellant did not contest that he failed to perform his monthly community service hours. Appellant invites us to overlook this fact by characterizing the allegation that Appellant committed a new offense as the "primary allegation in the motion to adjudicate." The allegation that Appellant committed a new offense is only primary in the arbitrary sense that it is mentioned first in the State's motion to adjudicate. In any event, it makes absolutely no difference because the violation of a single condition of community supervision is sufficient to support a revocation. *Moore*, 605 S.W.2d at 926. Appellant may not prevail unless he successfully challenges *both* of the trial court's findings that support the revocation of his community supervision. *Silber*, 371 S.W.3d at 611; *Jones*, 571 S.W.2d at 193–94. In this case,

9

Appellant did nothing to contest the trial court's finding that he failed to timely perform his community service hours as required by the terms and conditions of his community supervision. As such, the trial court's revocation of Appellant's community supervision must be affirmed, independent of the merits of Appellant's sufficiency-of-the-evidence attack on the trial court's finding that Appellant committed a new offense.

> *II. Issue Two – Appellant was not deprived of the effective assistance of counsel because his trial counsel's decision not to offer evidence regarding the duration of the restraint was not so outrageous that no competent attorney would have engaged in it. Even if trial counsel's failure to present evidence was deficient, there is no reasonable probability that, but for that error, the result would have been different.*

A. *Standard of Review*

To determine whether Appellant's trial counsel rendered ineffective assistance at the hearing on the State's motion to adjudicate, we must first determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.

*Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel did not have an opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

B. *Analysis*

In this case, Appellant's original trial attorney was not given the opportunity to explain his actions to the trial court in a hearing on a motion for new trial before being denounced as having been ineffective. We need not infer this lack of opportunity simply from the absence of any explanation by Appellant's original trial attorney, since it is readily conceded at the hearing on Appellant's motion for a new trial. Although Appellant's original trial attorney could have been subpoenaed to testify at the hearing on Appellant's motion for a new trial to explain his reasons for not presenting the audio and video files at the hearing on the State's motion to adjudicate, Appellant ostensibly elected not to do so. As such, the presumption that Appellant's original trial counsel's performance fell within the wide range of reasonable professional assistance and trial strategy will not be rebutted unless his conduct "was so outrageous that no competent attorney would have engaged in it." *Id.*

11

The State contends that the introduction of the video and audio evidence would have harmed Appellant's defense because it would have placed Appellant at the time and place of the altercation with Martin. Moreover, the State argues, Appellant's trial counsel had good reason not to introduce the evidence because it may have necessitated calling Appellant as a witness to authenticate the evidence, and this would have exposed Appellant to cross-examination. The State further argues that it is doubtful the evidence would have benefitted Appellant since it would confirm that Appellant blocked Martin's ability to drive away and would only contest the length of time for which he did so. This is important, the State argues, because there is no minimum amount of time for which a person must restrain another in order to be guilty of unlawful restraint. Thus, the State concludes, there was more risk than reward by introducing the audio and video files into evidence. It is unclear what Appellant's trial counsel's trial strategy actually was. It was not explained, but the State articulates a reasonable trial strategy. When considered in light of the strong presumption that Appellant's trial counsel's conduct fell within the wide range of reasonable and professional performance, the conduct at issue here cannot be characterized as so outrageous that no competent attorney would have pursued it. *See id.* We hold that Appellant has not shown that his trial counsel's performance was deficient; Appellant therefore has not shown that he was deprived of the effective assistance of counsel.

Even if Appellant's trial counsel's performance was deficient with respect to litigating the issue of whether Appellant committed the new offense of unlawful restraint, Appellant still cannot prevail on his ineffective assistance of counsel claim because he has not shown that the error was prejudicial. In order to prevail on a claim for ineffective assistance of counsel, an appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Andrews*, 159 S.W.3d at 102.

Appellant has shown no probability, reasonable or otherwise, that the result of the hearing on the State's motion to adjudicate would have been different but for the decision of Appellant's trial counsel not to introduce evidence pertinent to the allegation that Appellant committed the new offense of unlawful restraint. We reach this conclusion for two reasons. First, the law is clear that "there is no specific time requirement for determining whether a restraint has taken place." *Hines*, 75 S.W.3d at 447–48 (citing *Santellan v. State*, 939 S.W.2d 155, 163 (Tex. Crim. App. 1997); *Earhart v. State*, 823 S.W.2d 607, 618 (Tex. Crim. App. 1991), *vacated and remanded on other grounds*, 509 U.S. 917 (1993); *Rogers v. State*, 687 S.W.2d 337, 342 (Tex. Crim. App. 1985); *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980)). Having viewed and listened to the recordings and in light of the above, it is reasonably probable that, had Appellant's original trial counsel offered the omitted evidence challenging the length of time for which Martin was restrained, the trial court's finding of unlawful restrain would not have been different. Secondly, Appellant has done nothing to challenge the other ground upon which his guilt was adjudicated and his community supervision was revoked: namely, that he failed to perform his hours of community service as required by the terms and conditions of his community supervision. Even if Appellant had prevailed on his claims attacking the trial court's findings that he committed the new offense of unlawful restraint, the revocation of his community supervision because of his failure to perform the required community service hours would require affirmation of the judgment. *See Day v. State*, No. 11-19-00087-CR, 2021 WL 503464 (Tex. App.—Eastland Feb. 11, 2021, pet. ref'd) (mem. op., not designated for publication) (because one ground with sufficient evidence will support a trial court's revocation order, an appellant's other issues on appeal need not even be addressed to affirm the revocation).

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


November 12, 2021

Do not publish.  *See* Tex. R. App. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.