**REVERSE and REMAND and Opinion Filed February 23, 2023**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-21-00251-CR
No. 05-21-00252-CR
No. 05-21-00253-CR

**ERIC CALVIN TUAZON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 416-80963-2020 and 416-83493-2020**

## OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Molberg

Appellant Eric Calvin Tuazon appeals judgments convicting him of unlawful restraint of a person less than seventeen years of age and two counts of online solicitation of a minor, imposing certain costs, and sentencing him to two years' confinement in the Texas Department of Criminal Justice's (TDCJ's) State Jail Division on the unlawful restraint charge and to ten years' confinement in TDCJ's Institutional Division on each of the two counts of online solicitation.[1]

---

[1] *See* TEX. PENAL CODE §§ 20.02(a), 33.021(c).

Tuazon raises six issues on appeal. In his first two, he argues he was deprived of certain rights under the United States Constitution, based on alternative theories that (1) the trial court's misstatements to the venire regarding reasonable doubt[2] deprived him of due process under the Fifth Amendment or (2) his counsel's failure to object to such statements amounted to ineffective assistance of counsel under the Sixth Amendment. He also argues the evidence was legally insufficient in certain respects (third and fifth issues); the trial court committed charge error in the unlawful restraint case (fourth issue); and the trial court erred in assessing costs (sixth issue). We overrule the third and fifth issues, sustain the first issue, and need not address the other issues. Because we conclude the trial court's misstatements about reasonable doubt deprived Tuazon of due process, required no trial objection, and requires no analysis of harm on appeal, we reverse the judgments and remand each case for a new trial.

## I. DISCUSSION

### A. Sufficiency of the Evidence

We begin with Tuazon's third and fifth issues, in which he challenges the sufficiency of the evidence to support his convictions for the charged offenses.[3] We

---

[2] The trial court stated to the venire, without any objection:

> There's not really a good definition of reasonable doubt . . . one easy way to look at it is if you think about a football field, if they can get that football, just the nose of it, over the 50-yard line then they've met their burden . . . . [i]t's just that little, tiny bit over the 50-yard line . . . .

[3] His third issue concerns online solicitation of a minor; his fifth issue concerns unlawful restraint.

do so because, if either of these two issues is sustained, acquittal on the respective offense is required. *See Burks v. United States*, 437 U.S. 1, 18 (1978) ("Since . . . the Double Jeopardy Clause precludes a second trial once a reviewing court has found evidence legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal."); *Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013) (after concluding evidence was insufficient, court reversed judgment of the court of appeals, rendered judgment of acquittal, and cited *Burks* as requiring the remedy of appellate acquittal on grounds of evidentiary sufficiency).

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.).

The factfinder is the sole judge of witness credibility and the weight to be given testimony. *See Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).

In conducting our review, we consider "all evidence in the record of the trial, whether it was admissible or inadmissible." *Winfrey*, 393 S.W.3d at 767 (citations omitted); *see also Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) ("[A] reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination.").

### 1. Online Solicitation of a Minor

The State charged Tuazon with two counts of online solicitation of a minor, alleging that on two dates,[4] Tuazon did,

> then and there, with the intent that [A.M.] . . . a minor, would engage in sexual contact, and sexual intercourse, and deviate sexual intercourse, with [Tuazon] the defendant, knowingly solicit over the Internet and through a commercial online service, [A.M.] to meet [Tuazon][.]

*See* TEX. PENAL CODE § 33.021(c).[5]

In his third issue, Tuazon argues the evidence was not legally sufficient to convict him for either count because there is no evidence, or only a modicum of evidence, that (1) he solicited A.M. to meet him, or, even if he did so, (2) that he intended to engage in sexual activity with her that was illegal. In addition to arguing

---

[4] The State alleged offenses on or about December 29, 2019 (Count I), and January 15, 2020 (Count II).

[5] *See* TEX. PENAL CODE § 33.021(c) ("A person commits an offense if the person, over the Internet, . . . or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor[.]").

–4–

the transcripts of his online communications with A.M. do not reflect any solicitation on his part and that A.M. testified the initial plan to meet was her idea, not his, he argues his intent was not to have illegal sex with A.M., who was sixteen at the time, because while the record reflects he and A.M. did have sex after meeting, they did so not in Texas, but in Arkansas and Pennsylvania,[6] states for which the trial court took judicial notice that the age of consent is sixteen.

---

[6] On cross-examination, A.M. testified:

> [Tuazon's counsel]: All right. Now . . . when – I'm not going to get into the details of the sex that you had with [Tuazon], but suffice it to say, at the places where you engaged in sexual intercourse with [him], it was legal, as far as you know, correct?
>
> [A.M.] Yes.
>
> [Tuazon's counsel]: In fact, before engaging in it the very first time in Arkansas, he looked it up, did he not?
>
> [A.M.] He did.
>
> [Tuazon's counsel]: He wanted to make sure that he was not going to do something that would be a crime with respect to you, correct?
>
> [A.M.] Correct.
>
> [Tuazon's counsel]: And you also didn't want him committing a crime, right?
>
> [A.M.] Correct.
>
> [Tuazon's counsel]: And it was only after he looked it up and found that in Arkansas the age of consent was 16 and you were 16, that the two of you engaged in consensual sex, right?
>
> [A.M.] Yes.
>
> [Tuazon's counsel]: And he'd already looked up in Pennsylvania. He knew the age of consent was 16, right?
>
> [A.M.] Yes.
>
> [Tuazon's counsel]: So suffice it to say, the sexual activities that you engaged with Eric were all legal in the places where they occurred, correct?
>
> [A.M.] Yes.

In his brief, Tuazon cites, among others, *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013) (orig. proceeding), a case involving a charged offense under section 33.021(b), which was determined to be unconstitutionally broad and is not at issue here.[7] In dicta, the court contrasted that section with section 33.021(c) and stated the gravamen of a section 33.021(c) offense is "the *conduct* of requesting a minor to engage in illegal sexual acts." *Id*. at 17. The court also stated:

> The intent expressed in the bill analyses, the committee hearings, and the floor debate was that the crime of solicitation of a minor on the internet is complete at the time of the internet solicitation, rather than at some later time if and when the actor actually meets the child.

*Id*. at 23.

Consistent with *Ex parte Lo*'s description of section 33.021(c)'s legislative history, *see id*., the State argues Tuazon's plans about where he would ultimately have sex with A.M. does not absolve him of criminal liability under section 33.021(c), when it makes no reference to the legality in other states of acts constituting "sexual contact," "sexual intercourse," and "deviate sexual intercourse" as defined in penal code section 21.01. *See* TEX. PENAL CODE § 33.021(a)(2) (stating those phrases "have the meanings assigned by [penal code] Section 21.01"); *see also* TEX. PENAL CODE § 21.01(1)–(3) (defining those terms).[8]

---

[7] *See Ex parte Lo*, 424 S.W.3d at 27 (discussing section 33.021(b)'s overbreadth and holding that the court of appeals erred in upholding the constitutionality of that section).

[8] Penal code section 21.01 states, in part:

In this chapter:

The State cites, in part, *Ex parte Zavala*, 421 S.W.3d 227, 232 (Tex. App.—

San Antonio 2013, pet. ref'd), which states:

> [I]t is the requirement that the defendant must solicit "'with the intent that the minor will engage in sexual contact'" that operates to make otherwise innocent conduct, i.e., soliciting a minor to meet, into criminal conduct. It follows then, that for purposes of a subsection (c) solicitation offense, it does not matter what happens after the solicitation occurs because the offense has been completed[.]

The latter statement is consistent with *Ex parte Lo*'s statement that "the crime

of solicitation of a minor on the internet is complete at the time of the internet

solicitation, rather than at some later time if and when the actor actually meets the

child." 424 S.W.3d at 23. Those statements are also consistent with subsection (d),

which states, "It is not a defense to prosecution under [section 33.021(c)] that the

meeting did not occur." *See* TEX. PENAL CODE § 33.021(d).

Thus, to the extent Tuazon does so, we reject any argument that the legality

of any later sex acts between Tuazon and A.M. in other states renders insufficient

the evidence of his requisite intent under section 33.021(c) at the time of solicitation.

---

(1) "Deviate sexual intercourse" means:

    (A) any contact between any part of the genitals of one person and the mouth or anus of another person; or

    (B) the penetration of the genitals or the anus of another person with an object.

(2) "Sexual contact" means, except as provided by Section 21.11 or 21.12, any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person.

(3) "Sexual intercourse" means any penetration of the female sex organ by the male sex organ.

–7–

As section 33.021(c) indicates, the pertinent inquiry is whether Tuazon solicited A.M. online and whether, at the time he did so, he intended that A.M. engage in sexual contact, sexual intercourse, or deviate sexual intercourse as defined therein. *See* TEX. PENAL CODE § 33.021(a), (c); *see also* TEX. PENAL CODE § 21.01.

According to Tuazon, the evidence is legally insufficient because transcripts of his online communications with A.M. do not reflect a solicitation to A.M. to meet; A.M. testified the initial plan to meet was her idea, not his; and he lacked the requisite intent because their later sex acts in other states were legal, when the age of consent in those states was sixteen years of age.

We disagree and conclude the evidence was legally sufficient as to Tuazon's online solicitation of A.M. and as to his requisite intent at the time of solicitation based on the record before us. A.M. testified she and Tuazon texted and talked through a voice option on the Discord app, including about sexual things. The record contains transcripts of Tuazon's and A.M.'s messages through the Discord app on various dates in December 2019 and January 2020, when A.M. was sixteen.

Although A.M. testified on cross-examination that the initial plan to meet was her idea, not his, regardless of whose idea it was initially, in Tuazon's messages to A.M., he discussed ways A.M. could "sneak out[,]" suggested ways she should pack her things, stated he was "proud" of her "for making plans," told A.M. he would "be there" on a specific day and time for "a date[,]" told A.M. she could "take a [G]reyhound" to him if she was "desperate[,]" told A.M. he would "kidnap and save"

–8–

her, and, after she had previously changed her mind about their meeting, told A.M. as they communicated about other plans to meet that he was just taking her on a date and "[you're] not allowed. To back out." Also in his messages to A.M., among other sexually explicit statements, Tuazon described multiple oral sex acts he and A.M. would engage in with each other, referred to "a lazy life together" where they could "[e]at, sleep, [and] fuck[,]" and told A.M. he would "rape" her, record it, make her watch it, and would then "rape" her and record it again.

Based on the record before us, and viewing the evidence as we must, we conclude there is legally sufficient evidence of Tuazon's online solicitation of A.M. to meet and of his intent that A.M. engage in sexual contact, sexual intercourse, or deviate sexual intercourse as those terms are defined in the statute because a rational trier of fact could have found both elements beyond a reasonable doubt. *See* TEX. PENAL CODE § 33.021(a), (c); *see also* TEX. PENAL CODE § 21.01; *Jackson*, 443 U.S. at 319 (court views all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt); *Brooks*, 323 S.W.3d at 899 (same).

We overrule Tuazon's third issue.

### 2. Unlawful Restraint

The penal code provides, "A person commits an offense if he intentionally or knowingly restrains another person." TEX. PENAL CODE § 20.02(a). "'Restrain' means to restrict a person's movements without consent, so as to interfere

substantially with the person's liberty, by moving the person from one place to another or by confining the person." TEX. PENAL CODE § 20.01(1). Among other circumstances not pertinent here, restraint is "without consent" if it is accomplished by

> any means, including acquiescence of the victim, if . . . the victim is a child who is 14 years of age or older and younger than 17 years of age, the victim is taken outside of the state and outside a 120-mile radius from the victim's residence, and the parent, guardian, or person or institution acting in loco parentis has not acquiesced in the movement or confinement[.]

TEX. PENAL CODE § 20.01(1)(B)(ii).

Relying on that section, the State charged Tuazon by an indictment alleging that on or about January 15, 2020, he,

> did then and there intentionally and knowingly restrain by any means, [A.M.], a child who was at least 14 years of age but younger than 17 years of age, including by [her] acquiescence, without her consent to wit: by taking [A.M.] outside of the state and outside of a 120-mile radius from her residence, and her parents had not acquiesced in the movement, and [Tuazon] was more than three years older than [A.M.].[9]

After he pleaded not guilty, the case was tried to a jury with the online solicitation offenses. The jury unanimously found Tuazon guilty of the charged

---

[9] *See* TEX. PENAL CODE § 20.02(e), which is not at issue here and which states:

It is an affirmative defense to prosecution under this section that:

> (1) the person restrained was a child who is 14 years of age or older and younger than 17 years of age;

> (2) the actor does not restrain the child by force, intimidation, or deception; and

> (3) the actor is not more than three years older than the child.

–10–

offense, and consistent with the jury's verdict, the trial court entered judgment convicting him of the unlawful restraint offense, a state jail felony under the circumstances.[10]

In his fifth issue, Tuazon argues there was legally insufficient evidence to support the unlawful restraint conviction because there is no evidence he "interfered substantially" with A.M.'s liberty, when A.M. testified she did not believe she was being restrained and when Detective Roy Maxwell Winter testified as follows:

> [Tuazon's counsel]: Okay. And another element is interfering substantially with a person's liberty. You're aware that's an element?
>
> [Detective Winter]: Yes.
>
> [Tuazon's counsel]: And that's not part of the consent issue –
>
> [Detective Winter]: Correct.
>
> [Tuazon's counsel]: -- are you aware of that?
>
> [Tuazon's counsel]: Once again, you have no evidence that her liberty was substantially interfered with, do you?
>
> [Detective Winter]: No.

In contrast, the State argues the evidence was legally sufficient, citing *Cox v. State*, 497 S.W.3d 42, 49 (Tex. App.—Fort Worth 2016, pet. ref'd), and evidence reflecting that Tuazon picked A.M. up from a neighborhood park near her home in Frisco, Texas, and took her more than 120 miles away, without her parents' consent, first to Arkansas, where Tuazon and A.M. were stuck for about a day, and ultimately,

---

[10] "An offense under this section is a Class A misdemeanor, except that the offense is . . . a state jail felony if the person restrained was a child younger than 17 years of age." TEX. PENAL CODE § 20.02(c)(1).

–11–

to his home in Pennsylvania, where he left her alone for about a day, without transportation, in a location A.M. described to be "in the middle of nowhere."

*Cox* is distinguishable, for unlike that case, *see id*., there is no evidence Tuazon threatened A.M., took personal items from her, such as her phone, or was mean to her after he picked her up. However, while the evidence regarding restraint was stronger in *Cox*, looking at all the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Tuazon restricted A.M.'s movements without consent, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her. *See* TEX. PENAL CODE §§ 20.01(1), 20.02(a); *Jackson*, 443 U.S. at 319 (court views all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt); *Brooks*, 323 S.W.3d at 899 (same); *see also Hines v. State*, 75 S.W.3d 444, 448 (Tex. Crim. App. 2002) (stating, "It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place. This can be established by looking at all of the circumstances surrounding the offense."); *Rogers v. State*, 687 S.W.2d 337, 342 (Tex. Crim. App. 1985) (stating, "[O]ur law imposes no minimal requirement for restraint other than the interference with the victim's liberty be substantial." and

"[T]here is no time limitation: the proper measure is that the interference of liberty must be substantial.").

We overrule Tuazon's fifth issue.

## B. Due Process

"The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation." *In re Winship*, 397 U.S. 358, 361 (1970). There, the Court stated, "[A] person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case." *Id*. (citation omitted).

> At trial in the cases before us, the trial court told the venire:
>
> At the end of all of this, I will be giving the jury the law and the elements of the cases and we will ask you to apply those facts to the law and see if the State met its burden of proof. If they prove all of the elements, then the verdict is guilty. If they don't, the verdict is not guilty.
>
> . . . .
>
> The burden of proof is beyond a reasonable doubt. That is the State's burden. It never shifts to the Defense. . . . The burden always stays with the State to prove their case. And so it's going to be up to you-all to determine reasonable doubt.
>
> There are – *there's not really a good definition of reasonable doubt*, so the attorneys are going to talk to you about that. They'll tell you it's more than this, it's less than that. It's different for every single juror to determine if they've met that burden, so there is not a very specific thing that we can look for and say, if you check these boxes, that's

reasonable doubt. That's going to be each of you to determine what that is for you.

*What – one easy way to look at it is if you think about a football field, if they can get that football, just the nose of it, over the 50-yard line then they've met their burden. Okay? They're not expected to have to take it all the way down to the endzone, spike the football, and convince everybody beyond any shadow of a doubt, no possibility, right? It's just that little, tiny bit over the 50-yard line. So that's kind of what we're looking for.*[11]

In his first issue, Tuazon argues the trial court violated his due process rights by incorrectly defining the reasonable doubt standard during voir dire. Both parties agree due process requires proof beyond a reasonable doubt for criminal convictions. *See id*. at 364 ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").[12]

Both parties also agree the trial court's statements during voir dire, which informed the venire that the State's burden would be met by "get[ting] [the] football, just the nose of it, over the 50-yard line . . . . just that little, tiny bit" was erroneous.

---

[11] Emphasis is our own.

[12] *See also* U.S. CONST. amend. V ("No person shall be deprived of life, liberty, or property, without due process of law"); U.S. CONST. amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); *Victor v. Nebraska*, 511 U.S. 1, 5 (1994); *Sullivan v. U.S.*, 508 U.S. 275, 277–78 (1993) (internal citations omitted). *Sullivan*, 508 U.S. at 277–78, states:

> What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged . . . and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements . . . . This beyond a reasonable doubt requirement, which was adhered to by virtually all common-law jurisdictions, applies in state as well as federal proceedings.

They disagree, however, on whether we can review that error on appeal, when Tuazon did not object to it at trial. We conclude we can.

### 1. Error Preservation

The court of criminal appeals recently explained the applicable standards:

> Generally, error must be preserved under Rule 33.1 of the Texas Rules of Appellate Procedure. TEX. R. APP. [P.] 33.1. Under that rule, the complainant must object and state the ground for the objection with sufficient specificity that the trial court knows what the complainant wants and why the complainant thinks he is entitled to it. *Id*. (a)(1)(A); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity," for preservation purposes, "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."). The complainant must also object when the court can remedy the error, and a ruling on the objection must be obtained unless the trial court refuses to rule. TEX. R. APP. P. 33.1(a)(2)(A)–(B). The specificity requirement is satisfied if the grounds for the objection were apparent from the context. *Id*. (a)(1)(A).
>
> Rule 33.1 does not apply to all alleged errors. Litigant's rights usually fall into three categories: (1) systemic requirements and prohibitions, (2) waivable-only rights, (3) and forfeitable rights. *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). Rule 33.1 does not apply to complaints about systemic requirements and prohibitions or waivable-only rights. *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). Either type of claim can be raised for the first time on direct appeal. *Id*.

*Rios v. State*, No. PD-0441-21, 2022 WL 17481021, at *7 (Tex. Crim. App. Dec. 7, 2022); s*ee also Proenza v. State*, 541 S.W.3d 786, 798 (Tex. Crim. App. 2017) (citing *Marin*, 851 S.W.2d at 280); *Noble v. State*, No. 05-21-00326-CR, 2022 WL

–15–

17351908, at *12 (Tex. App.—Dallas Dec. 1, 2022, pet. filed) (mem. op., not designated for publication) (also describing these standards).

Tuazon argues the trial court's erroneous statements regarding reasonable doubt denied him his due process rights to a fair trial, to be presumed innocent, and to be convicted only if found to be guilty beyond a reasonable doubt. He characterizes the latter two rights at issue as category-two, waivable-only rights under *Marin* and thus argues he was not required to object at trial to preserve appellate review.

The State responds, in part, by correctly noting the trial court was not required to define reasonable doubt. *See Victor*, 511 U.S. at 5.[13] While Tuazon does not dispute this, he argues he had a due process right not to have reasonable doubt defined incorrectly. The State agrees an improper definition of reasonable doubt may violate due process.[14]

---

[13] *Victor*, 511 U.S. at 5 (internal citations omitted), states:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. . . . Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt . . . the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.

[14] The State's brief states:

> The State does not dispute that an improper definition of reasonable doubt may violate due process. The United States Supreme Court recognized such a violation in *Cage v. Louisiana*, 498 U.S. 39 (1990). Specifically, the Court held a jury instruction equating "reasonable doubt" with a "substantial doubt" and "grave uncertainty" violated due process. *Id*. at 40. Moreover, since *Cage*, the Supreme Court has held that "trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." *Victor v. Nebraska*, 511 U.S. at 22. But the Supreme Court has not held that such a due process violation cannot be forfeited.

Thus, the parties agree about the nature of Tuazon's right—the due process right for the trial court not to define reasonable doubt incorrectly—but disagree about which *Marin* category the right falls in and thus whether we may consider the trial court's incorrect statements in this appeal because Tuazon failed to object at trial. Tuazon argues we can do so because his right is a waivable-only, category-two right under *Marin*, while the State argues we cannot because the right is a forfeitable, category-three right under *Marin*.

Neither party has presented us with any binding case answering the question under the specific circumstances presented. In arguing its position, the State relies, in part, on *Fuentes v. State*, 991 S.W.2d 267 (Tex. Crim. App. 1999), *Pitts v. State*, No. 05-14-01375-CR, 2016 WL 1270311 (Tex. App.—Dallas Mar. 31, 2016, no pet.) (mem. op., not designated for publication), and *Cade v. State*, 795 S.W.2d 43 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (partial publication). While these cases involve some similarity to our case, two do not mention *Marin*,[15] and none involve the same incorrect comments as those expressed here.

On the latter point, *Cade* comes the closest, but still falls far short of the specific direction the trial court gave here. Because of the similarities in the analogies used in *Cade* and in this case, we discuss it first.

---

[15] Neither *Fuentes* nor *Cade* discuss *Marin*. *Cade* predates *Marin*; *Fuentes* does not.

### a. *Cade v. State*, 795 S.W.2d 43 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (partial publication)

In *Cade*, the trial court told the venire:

So, this presumption of innocence, you may say—use the comparison of the continuum, a scale of zero to one hundred. The defendant starts off, under this system of presumption of innocence, at zero. . . . [Y]ou start him off at zero, and then allow the State the opportunity to go ahead and start calling their witnesses, under oath, and see if, after you hear the first one, whether or not that pointer on the scale may move from zero to fifteen, as an example. And you hear the second witness. It might inch its way up to thirty. You hear a third witness. It might kick it over to fifty or fifty-five, let's say. And somewhere between fifty and one hundred is that magic area, but, yet, not a defined area, in the criminal law, where the jury will be satisfied that, beyond a reasonable doubt, the State has shown the guilt of the defendant. We do know it doesn't reach a hundred, if we stretch out our explanation a little bit further.

795 S.W.2d at 44. Like Tuazon's counsel in this trial, Cade's counsel failed to object to the trial court's comment. *See id.* at 45. Our sister court concluded, pre-*Marin*, that "[i]n the absence of fundamental error," which the court did not find existed, "Cade has waived these points on appeal," stating:

Cade's counsel failed to object to the trial court's comments or the prosecutor's statements. In the absence of fundamental error, Cade has waived these points on appeal. *McGee v. State*, 689 S.W.2d 915, 919 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd); *Wells v. State*, 634 S.W.2d 868, 874 (Tex. App.—Houston [1st Dist.] 1982, pet. ref'd, untimely filed).

We find no fundamental error. Although we do not approve the trial court's suggestion that the reasonable doubt test might be satisfied "somewhere between fifty and one-hundred" on a scale of one to 100, we do not find that the trial court's analogy was such a serious error that we can reverse in the absence of an objection. The trial court cautioned the jury panel that the law does not define "reasonable doubt" in terms of a specific quantum of proof. . . . Neither party referred to

> the trial court's example again. We do not find that the trial court's single comment caused the jury to misunderstand the reasonable doubt standard.

*Id.* This conclusion was reached more than two years before *Marin* and *Sullivan* and more than three years before *Victor*.

We do not reach the same conclusion in this case because, in our view, the trial court's comments were far more serious an error than in *Cade* and rise to the level of category-two, waivable-only error under *Marin*. Although both courts essentially used the same scale,[16] unlike the "magic" range of "somewhere between fifty and one hundred" as the court stated in *Cade*, in this case, the trial court told the venire the State would meet its burden at a specific point: where "just the nose of [the football]" was "over the 50-yard line" by "just that little, tiny bit." In other words, while the trial court in *Cade* pointed the venire members to "somewhere," the trial court in this case essentially told them, "here."

This is a distinction with a difference of constitutional magnitude, especially when the "here" point the trial court referred to was the same point often used to describe the point at which the preponderance of the evidence standard is met. *See, e.g., Roccaforte v. State*, No. 09-19-00428-CR, 2022 WL 107113, at \*2 (Tex. App.—Beaumont Jan. 12, 2022, no pet.) (mem. op., not designated for publication) (quoting defense counsel's statements that noted the trial judge had used a football

---

[16] *Cade* used a "zero to one hundred" scale without comparing it to a football field, which has one hundred yards.

field analogy to describe the preponderance of the evidence as being "just beyond the 50-yard line, a little bit of a fraction").[17]

**b.** ***Fuentes v. State*, 991 S.W.2d 267 (Tex. Crim. App. 1999)**

Next, we consider *Fuentes*, which, though binding, is distinguishable.

In *Fuentes*, the trial court provided a proper *Geesa* instruction[18] in the jury charge but told the venire the following during voir dire:

> If at the conclusion of all of the evidence in the case and based upon your evaluation of all of the evidence in the case, if you *believe in your heart and in your conscience based upon your evaluation of the evidence in the case that the defendant is guilty*, the State has proved its case beyond a reasonable doubt.
>
> . . . .
>
> [I]f at the conclusion of all the evidence in the case, based upon your evaluation of that evidence if you do not *believe in your heart and in your conscience, based upon your evaluation of that evidence, that the defendant is, in fact, guilty* of the offense, the State has failed in its proof to show to you beyond a reasonable doubt that the defendant is guilty.

*Fuentes*, 991 S.W.2d at 273 (emphasis in original).

---

[17] While those comments are similar to the trial court's comments here, *Roccaforte* is distinguishable and does not pose the same questions we decide here. Instead, *Roccaforte* involved alleged error in the trial court's sustaining of the State's objection to defense counsel's comments during closing argument. *Roccaforte*, 2022 WL 107133, at *2. Although we are paraphrasing, our sister court held, in essence, that the trial court did not abuse its discretion by sustaining the State's objection to an argument by defense counsel that ran the risk that some jurors might have understood the State's burden as requiring it to prove guilt beyond all doubt, based on what the prosecutor anticipated would be, and the trial court could have inferred, would be a crossing-the-goal-line analogy on a football field. *Id.*, at *4–5.

[18] *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), *overruled by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) ("We specifically overrule that portion of *Geesa* which requires trial courts to instruct juries on the definition of 'beyond a reasonable doubt.'").

The opinion sheds no light on whether the parties agreed the trial court's comments misstated the reasonable doubt burden and does not analyze any error in the trial court's comments or any issues under *Marin*.

Instead, the opinion merely notes Fuentes objected to the first quoted statement but not the second, and without discussing *Marin*, the court concluded Fuentes waived any complaint, stating, "In order to preserve error, the objecting party must continue to object each time the objectionable evidence is offered. [Fuentes] thus waived any complaint as to the trial court's remarks." *Id*. (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)).

Here, the parties agree the trial court erred in its comments regarding reasonable doubt, and their dispute regarding waiver is based on *Marin*, which *Fuentes* does not discuss, not waiver in the context of admission of evidence.

Because *Fuentes* does not address the specific scenario before us, *Fuentes* appears to have limited utility here.

### c. *Pitts v. State*, No. 05-14-01375-CR, 2016 WL 1270311 (Tex. App.—Dallas Mar. 31, 2016, no pet.) (mem. op., not designated for publication)

Next, we consider *Pitts*, an unpublished opinion from our Court, which involved a complaint about an unobjected-to comment during voir dire in which the trial court stated, "The State's not required to prove guilt beyond all possible doubt. It's only required that the State prove to exclude all reasonable doubt concerning the Defendant's guilt." *Pitts*, 2016 WL 1270311, at *5.

In our opinion, we noted that on appeal Pitts argued the trial court's statements constituted fundamental constitutional error that could be raised for the first time on appeal because an improper comment on the definition of reasonable doubt violates his right to a jury trial and his due process right to be convicted only if the evidence shows the elements of the crime beyond a reasonable doubt. *Id*. (citing *Marin*). We also noted the State's arguments that Pitts did not preserve error and that the trial court's remarks did not constitute fundamental error because they did not directly comment on Pitts's Fifth Amendment rights or shift the State's burden of proof in any way. *Id*. We agreed with the State and concluded that the trial court's comment "did not rise to the level of fundamental error, and, as a result, [Pitts] waived further complaint about them by not objecting to them in the trial court." *See Pitts*, 2016 WL 1270311, at *5–7.

But the trial court's comments in that case are a far cry from those made here, where the trial court did precisely what we agreed the trial court did not do in *Pitts*: shifted the State's burden of proof, by effectively equating it to a preponderance of evidence standard, a matter we discuss further in section I.B.2. below. Thus, *Pitts* is distinguishable, and we do not reach the same conclusion here.

### d. *Other Cases*

Finally, we note that the State cites several cases from our sister courts in arguing that Tuazon forfeited his right not to have the trial court incorrectly define the State's burden. Because none of those cases involve the same comments at issue

here, we find those cases distinguishable, and to the extent they reach a different conclusion regarding error preservation, we decline to follow them.[19]

### e. Conclusion

In *Marin*, the court stated,

> All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong. Many constitutional rights fall into this category. When we say "that even constitutional guarantees can be waived by failure to object properly at trial," we mean that some, not all, constitutional rights may be forfeited. *Gibson v. State*, 516 S.W.2d 406, 409 (Tex. Crim. App. 1974). On the other hand, certain, relatively few, rights must be protected by the system's impartial representatives unless expressly waived by the party to whom they belong. Determining which category a right occupies will usually settle the question of procedural default in the context of a particular case.
>
> Of course, the system also includes a number of requirements and prohibitions which are essentially independent of the litigants' wishes. Implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. . . .
>
> Thus, our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the

---

[19] *See Arrellano v. State*, 555 S.W.3d 647, 652–53 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Latson v. State*, 440 S.W.3d 119, 121–22 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Haro v. State*, 371 S.W.3d 262, 264–66 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Wilkerson v. State*, 347 S.W.3d 720, 725–26 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Marshall v. State*, 312 S.W.3d 741, 743–44 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also Williams v. State*, No. 14-19-00979-CR, 2021 WL 5707411, at *6 (Tex. App.–Houston [14th Dist.] Dec. 2, 2021, no pet.) (mem. op., not designated for publication); *Meadows v. State*, Nos. 01-09-00443-CR & 01-09-00444-CR, 2010 WL 2874199, at *6 (Tex. App.—Houston [1st Dist.] July 22, 2010, pet. ref'd) (mem. op., not designated for publication); *Ahmadi v. State*, No. 14-08-00584-CR, 2010 WL 307909, at *6–7 (Tex. App.—Houston [14th Dist.] Jan. 28, 2010, pet. ref'd) (mem. op., not designated for publication); *Harrison v. State*, No. 01-97-01408-CR, 1999 WL 312300, at *2–3 (Tex. App.—Houston [14th Dist.] May 13, 1999, no pet.) (not designated for publication).

present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

*Marin*, 851 S.W.2d at 279.

On the specific facts before us, we conclude Tuazon had a waivable-only, *Marin*-category-two due process right not to have the trial court define reasonable doubt in a manner that shifted the State's burden of proof. *See id*. at 280 (describing waivable-only, category-two rights). Because the record lacks any indication Tuazon affirmatively waived this right in the trial court, we conclude we may consider the trial court's error in this appeal. *See id*.; *see also Rios*, 2022 WL 17481021, at *7; *Proenza*, 541 S.W.3d at 798; *Noble*, 2022 WL 17351908, at *12 (all describing *Marin* standards).

## 2. Deprivation of Due Process

Having concluded that we may consider Tuazon's first issue, we next consider whether the trial court's statements regarding reasonable doubt deprived Tuazon of due process, as he argues. If the trial court's incorrect statements had been made to the jury in a jury charge, the answer would depend on whether "there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *See Victor*, 511 U.S. at 6.[20]

---

[20] *Victor* stated, "The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." 511 U.S. at 6. Previously, in *Cage*, 498 U.S. at 40, the Court found unconstitutional a jury instruction that defined reasonable doubt, in part, as "such doubt as would give rise to a grave uncertainty[,] . . . an "actual substantial doubt" . . . requir[ing] . . . a moral certainty" when it was "clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required

But because the statements at issue were not made in a jury charge, an obvious question arises: does our analysis change because the statements were made to the venire during voir dire? The parties have directed us to no cases from the United States Supreme Court answering that question, and we have found no guidance in the code of criminal procedure to answer it either.[21]

One binding Texas case that predates *Cage*, *Sullivan*, and *Victor* states, "Only when a trial court's comments during voir dire are reasonably calculated to benefit the State or prejudice the defendant's rights will reversible error occur." *Gardner v. State*, 733 S.W.2d 195, 210 (Tex. Crim. App. 1987) (citation omitted).

An even earlier binding case contains somewhat similar language but does not set forth a specific standard we are to apply. *See Parks v. State*, 400 S.W.2d 769, 771 (Tex. Crim. App. 1966) (stating no error was shown in trial court's remarks to the jury panel regarding reasonable doubt when it appeared the remarks were "not a comment on the weight of the evidence, did not convey to the jury any opinion of the court as to the facts, and were not calculated to injure the rights of the appellant.").[22] Yet another binding case examined whether a trial court erred when

---

by the Due Process Clause." *Id*. at 41 (after concluding the instruction was unconstitutional, the Court reversed the prior judgment and remanded the case to the trial court for further proceedings). As *Victor* notes, the *Cage* standard was later clarified to make clear "that the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it."). *Victor*, 511 U.S. at 6 (citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991) (emphasis supplied)).

[21] *See* TEX. CODE CRIM. PRO. art. 35.17 (voir dire).

[22] The remarks at issue in *Parks* were far different from the remarks made here. There, the court stated:

explaining reasonable doubt to the venire, but the opinion sheds no light on how we are to analyze the trial court's comments, and, in any event, the case is distinguishable.[23]

Tuazon argues, and the State does not dispute, that the trial court's challenged comments equated the State's beyond a reasonable-doubt burden with a preponderance of evidence burden. We agree that they did so.

More than twenty years ago, one author observed:

> Of greatest concern, scholarly studies and anecdotal evidence suggest that jurors conflate reasonable doubt with the civil standard of preponderance of the evidence. The horrifying implication is that American juries may be depriving defendants of their fundamental due process right to have their guilt proved beyond a reasonable doubt.

John P. Cronan, *Is Any of This Making Sense? Reflecting on Guilty Pleas to Aid Criminal Juror Comprehension*, 39 AM. CRIM. L. REV. 1187, 1188 (2002) (footnotes and citations omitted).

---

> In this case, as in all criminal cases, the burden of proof is on the State to show the defendant's guilt beyond a reasonable doubt, and after all the evidence is in, if there is a doubt in your mind, a reasonable doubt, that is, a doubt based upon reason, that a reasonable man would have as to the guilt or innocence of the defendant, the law says you must resolve that doubt in favor of the defendant and say by your verdict, 'not guilty,' and it would be your duty to follow the law in that instance. If after all the evidence is in, the State has discharged that burden and you have found beyond a reasonable doubt that a defendant is guilty, then it is your duty to follow the law in that case.

*Parks*, 400 S.W.2d at 771.

[23] *See Dent v. State*, 504 S.W.2d 455, 457 (Tex. Crim. App. 1974) (after noting the defendant complained not about the accuracy of the trial court's explanation of reasonable doubt to the jury panel but only its authority to give it—and without describing what that explanation included—the court perceived no error and stated the explanation may be made under article 35.17 of the code of criminal procedure).

Here, the "horrifying implication" is even worse, because at the very outset of the trial, the trial judge not only conflated the two standards but also told the members of the venire they could do so, too.

The better practice would have been to give no definition of reasonable doubt to the jury at all. *See Paulson,* 28 S.W.3d at 573 (citing *Reasonable Doubt: An Argument Against Definition*, 108 HARV. L. REV. 1955 (1995)).[24] While *Paulson* said this in the context of a jury charge, in our view, trial courts should consider a similar approach during any explanatory statements to the venire.

We conclude, under the unique circumstances before us, Tuazon was deprived of due process by the trial court's comments to the venire which equated the beyond a reasonable doubt burden with a preponderance of the evidence burden, comments that "were reasonably calculated to benefit the State or prejudice the defendant's rights," and which thus constitute reversible error. *See Gardner*, 733 S.W.2d at 210.

### 3. Whether Harm Analysis is Required

We next consider whether the trial court's error requires a harm analysis. Tuazon argues no harm analysis is required because the error is a structural error and alternatively argues there is reasonable doubt he was harmed by the error. The State took no position on either of those arguments but acknowledged that *Sullivan*

---

[24] The cited law review article concludes, "Because reasonable doubt is an inherently amorphous term that demands value judgment in its application, the jury is best suited, as a representative body of the community, to determine its meaning. To imbue the trial process with the collective wisdom of the community, courts should leave reasonable doubt undefined in their instructions to juries." 108 HARV. L. REV. at 1972.

characterized a constitutionally infirm reasonable doubt jury instruction as "structural error." *Sullivan*, 508 U.S. at 281–82.[25]

Although the United States Supreme Court has "characterized as 'structural' 'a very limited class of errors' that trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole[,]" "[e]rrors of this kind include . . . failure to convey to a jury that guilt must be proved beyond a reasonable doubt." *United States v. Davila*, 569 U.S. 597, 611 (2013).

In this case, while the trial court stated that guilt must be proved beyond a reasonable doubt, in practical effect, the court also stated proof beyond a reasonable doubt was not required. By effectively equating the beyond a reasonable doubt standard with the preponderance of the evidence standard, the trial court failed to convey that guilt must be proved beyond a reasonable doubt in the one and only instance in which reasonable doubt was defined.

Under the unique circumstances before us, we conclude the trial court's misstatement regarding reasonable doubt constituted a structural error not subject to a harm analysis. *See Davila*, 569 U.S. at 611; *Sullivan*, 508 U.S. at 281–82.

---

[25] In *Sullivan*, 508 U.S. at 281, the Court described the denial of the right to a jury verdict of guilt beyond a reasonable doubt as an error of the sort described in *Arizona v. Fulminate*, 499 U.S. 279, 309 (1991), as involving "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards."

## II.    CONCLUSION

We reverse the trial court's judgments and remand each case for a new trial.

/Ken Molberg/
KEN MOLBERG
JUSTICE

Publish
TEX. R. APP. P. 47.2(b)

210251F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ERIC CALVIN TUAZON, Appellant

No. 05-21-00251-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-80963-2020.

Opinion delivered by Justice Molberg. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for a new trial.

Judgment entered this 23rd day of February, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERIC CALVIN TUAZON, Appellant

No. 05-21-00252-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-83493-2020 (Count I). Opinion delivered by Justice Molberg. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for a new trial.

Judgment entered this 23rd day of February, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERIC CALVIN TUAZON, Appellant

No. 05-21-00253-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-83493-2020 (Count II).
Opinion delivered by Justice Molberg. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for a new trial.

Judgment entered this 23rd day of February, 2023.